**Bette C. LANCASTER,
Plaintiff-Appellee,**

v.

**Edd T. LANCASTER,
Defendant-Appellant.**

Court of Appeals of Tennessee,
Middle Section, at Nashville.

April 17, 1984.

Permission to Appeal Denied by
Supreme Court June 11, 1984.

Douglas T. Bates, III, Centerville, for plaintiff-appellee.

John J. Hollins, Hollins, Wagster & Yarbrough, P.C., Nashville, for defendant-appellant.

## OPINION

CONNER, Judge.

This is a dispute over the division of property and alimony in a divorce case.

The wife, plaintiff-appellee, Bette C. Lancaster, age 49, sued the husband, defendant-appellant, Edd T. Lancaster,[1] age 50, for divorce on the basis of cruel and inhuman treatment and adultery. In her pleadings she further sought a division of the marital property of the parties and alimony *pendente lite*. In a discovery deposition taken prior to trial the husband admitted adultery. At trial plaintiff sought permanent alimony though there was never any formal amendment of her complaint seeking that relief. The proof reflected that the parties' net worth was $1,000,000.00, composed of very liquid assets. After a bench trial, Mrs. Lancaster received the divorce on both fault grounds alleged. The trial court awarded her $500,000.00 as a division of jointly held property. Further, the trial judge awarded the wife $250,-000.00 as alimony *in solido*. The husband appeals.

Mr. Lancaster succinctly raises the sole issue as follows:

Whether the Trial Court erred in awarding the Wife Seven Hundred Fifty Thousand Dollars ($750,000) out of a marital estate of approximately One Million Dollars ($1,000,000), all of which was accumulated through the efforts of the Husband.

While we recognize that the trial court has wide discretion in the division of property and the award of alimony, *Shackleford v. Shackleford*, 611 S.W.2d 598, 600 (Tenn.App.1980), our review is *de novo* with a presumption of correctness of the ruling below. T.R.A.P. 13(d).

In its memorandum opinion deciding this matter the trial judge held that "the fault of the husband constitutes a significant factor to be considered in connection with the wife's claim for alimony." In addition to the husband's misconduct the court also determined that three other factors were conclusive herein:

(1) The concept that the wife who obtains a divorce as a result of the misconduct of her husband should not suffer economically as a result of the divorce. (2) The vast disparity between the earning capacities of the parties.[2] (3) The standard of living maintained by the parties prior to their separation.

All of these considerations are applicable to the award of alimony. However, there are others. Among those stated in *Massey v. Massey*, 621 S.W.2d 728 (Tenn.1981), are the following: [3]

"... the financial circumstances of the parties, with special reference in some instances to their estates, incomes, debts, obligations, or necessities; the source of their property, that is, how and when it was acquired, and whether their property was acquired or accumulated before or after marriage; the estate of each of the parties at the time of the marriage; what the parties surrendered or gave up by marriage; whether the property is the husband's separate property or the joint accumulation of the parties; and the con-

---

**1.** Hereinafter the parties will be referred to as in the trial court or by their names, as abbreviated.

**2.** The husband earns more than $100,000 per year. The wife does not work but is mentally and apparently physically capable, though she is troubled by arthritis from time to time.

**3.** The version of T.C.A. § 36–820 in effect at the time this divorce was heard stated that alimony should be awarded "according to the nature of the case and circumstances of the parties." As amended, T.C.A. § 36–820 now contains a list of eleven factors to be considered by the trial court, but these factors do not vary significantly from those identified in *Massey*. T.C.A. § 36–820(d) (1983 Supp.).

tributions of each to the joint or accumulated property.

"Other factors that may be taken into consideration in passing on alimony include the ability of the parties to earn, and their probable future prospects; their sex, age, health, and ability to labor; the respective ages of both of the parties to the divorce proceeding when they married; their station in life or standard or mode of living; their children, if any, and the care and disposition of them; the duration of the marriage and whether it was one of affection or convenience; *and the conduct of the parties, with particular reference to the cause of divorce and the relative or comparative responsibility of each therefor."*

*Id.* at 729, *quoting* 27A C.J.S. *Divorce* § 233(1) (1959) (emphasis in original). Two of these factors that are here particularly relevant and militate strongly against the award below are the manner in which the marital estate was accumulated and *need.*

In the first respect, though of less significance in this case, the record reveals that Mr. Lancaster had worked diligently for the thirty years of the marriage and had always been a good provider for his wife and their now grown children. His labors have contributed almost 100% of the assets of the marriage.

More significantly, the proof of Mrs. Lancaster was that her total annual requirements were some $58,500.00. It is apparent that if this entire amount were available the wife's standard of living would not be materially decreased. It included such lavish items as $1,200.00 a month for food and clothing, $5,000.00 for an annual vacation abroad, $3,000.00 for two "in-country" vacations per year, $8,000.00 annually for new clothes, $4,000.00 a year for ski trips, $3,000.00 annually to trade in her car every other year, and $3,000.00 per annum for household help, though she lives alone.

■ Even viewing the proof in the light most favorable to the wife, it reflects that the marriage was fraught with conflict from the beginning. Included in, but certainly not limited to, the long-term disharmony, were sexual conflicts, namecalling, threats of violence and actual physical fights instigated at various times by both parties. Mr. and Mrs. Lancaster first started seeing marriage counselors in 1968. In short, without rehashing all the "gory details," we are satisfied that here, as is the case with most failed marriages, there was realistically fault on both sides. However, assuming *arguendo* for purposes of our decision that Mrs. Lancaster was and had been for thirty years a veritable paragon of virtue and that Mr. Lancaster had been a complete marital "villain," we still believe the court erred in awarding alimony in this case because the wife simply failed to display a real need therefor. This in our judgment is the single most critical factor in the award of alimony. Along with the ability to pay, need is the cornerstone for the award of alimony. *See Aleshire v. Aleshire,* 642 S.W.2d 729, 733 (Tenn.App. 1981). Alimony is not and never has been intended by our legislature to be punitive. *See McClung v. McClung,* 29 Tenn.App. 580, 584, 198 S.W.2d 820, 822 (1947). Nor do we believe it was intended simply as an award for virtue. It is not designed to serve as an annuity for the wife; or as Professor Clark has stated "[t]he purpose of alimony is to care for the wife's needs after divorce, not to provide her with a life-time profit-sharing plan." [4] H. Clark, *Law of Domestic Relations* § 14.9(4) (1968).

■ An alimony statute must serve the legitimate and important government objective of providing financial assistance to a *needy spouse* in a divorce action. *Orr v. Orr,* 440 U.S. 268, 280, 99 S.Ct. 1102, 1112, 59 L.Ed.2d 306 (1979); *Mitchell v. Mitchell,* 594 S.W.2d 699 (Tenn.1980).

■ In this case Mrs. Lancaster was awarded one-half of the liquid assets or $500,000.00—with no liabilities—as a division of jointly held property. If she did

---

**4.** This comment was made in the context of determining requests for increases in periodic alimony but is equally true in this situation.

nothing but invest these funds in tax free bonds yielding 10%, her annual income would be $50,000.00 without the least invasion of the corpus. If Mrs. Lancaster really believes she must have all of the luxuries heretofore specified, she has several alternatives. She can make a modest annual invasion of the corpus—and it is of a size that, based upon her own list of needed expenditures, several years would be required to significantly reduce the fund. She can attempt to obtain a higher yield on her investments—though there are obviously certain economic risks inherent therein. Or she may go to work on a full or part-time basis.

Mr. Lancaster catapulted a high school education and years of hard work into a successful business which, when sold, left the parties with a large estate. While we fully recognize and appreciate the contributions Mrs. Lancaster made as a homemaker and a mother, we believe the award of half of that estate or $500,000.00 is ample. Had the trial court chosen to award Mrs. Lancaster less of the assets (in the range of $250,000.00) and then made a substantial award of periodic alimony (approximately $2,000.00 per month), we believe that would have likewise been entirely proper. However, in our view, given the amount awarded to Mrs. Lancaster in the division of property there is simply no need for alimony, irrespective of any consideration of fault.

We understand the "which comes first, the chicken or the egg" quandary continually faced by trial courts in trying to decide what to do first, make a division of property, or deal with an award of alimony. We are equally sympathetic to the plight of trial judges in situations such as here where there are substantial fixed assets and one set of rules applies to the division thereof and another to alimony, whether *in solido* or *in futuro;* fault being a consideration in the latter, but not the former. However, that is the wisdom of the legislature as clearly interpreted in *Fisher v. Fisher*, 648 S.W.2d 244, 247 (Tenn.1983). We believe it is safe to say that to the extent the concept of "fault" might creep into the subconscious mind of a trial judge

in the division of jointly held property—no matter how much care is taken to avoid that temptation—a subsequent careful review of the very steady barometer of "need" when considering alimony will temper excessive awards based primarily on "fault" and an ability to pay.

We reiterate that, given the liquidity of the assets here and the fact that no minor children were involved, there are a variety of alternatives that could have been chosen to properly care for Mrs. Lancaster. However, in view of the division of jointly held property we do not believe an award of alimony is justified. We are satisfied that with the sum of $500,000.00 available to her Mrs. Lancaster meets the mandate of *Shackleford*, not always possible to attain, that "the party obtaining the divorce should not be left in a worse financial situation than he or she had before the opposite party's misconduct brought about the divorce." 611 S.W.2d at 601.

Accordingly, that portion of the judgment awarding Mrs. Lancaster alimony is reversed. However, in view of the fact that Mrs. Lancaster will need to maintain the corpus of the property awarded to her to produce the income sufficient to allow her to substantially maintain the standard of living to which she had become accustomed while married, we believe that Mr. Lancaster should bear the reasonable fees of her attorney. The balance of the judgment is affirmed and this cause is remanded for such further proceedings as may be necessary to determine and award to counsel for Mrs. Lancaster reasonable attorney's fees as aforesaid. The costs of this appeal are taxed against Mr. Lancaster as it is our intention to preserve intact for Mrs. Lancaster's use the $500,000.00 fund awarded by the trial court.

AFFIRMED IN PART, REVERSED IN PART AND REMANDED.

LEWIS and CANTRELL, JJ., concur.