**Marian Krause SMITH, Plaintiff–Appellee,**

v.

**John Armistead SMITH, Defendant–Appellant.**

Court of Appeals of Tennessee, Western Section.

June 13, 1995.

Application for Permission to Appeal Denied by Supreme Court Oct. 30, 1995.

Kay Farese Turner, Charles W. McGhee, Memphis, for Appellee.

G. Cogle Caperton and Richard J. Myers of Farris, Hancock, Gilman, Branan & Hellen, Memphis, for Appellant.

CRAWFORD, Judge.

This is an appeal from a Final Decree of Divorce entered April 28, 1993. The parties, John Armistead Smith (hereinafter Husband) and Marian Krause Smith (hereinafter Wife), were married on July 5, 1958. Husband is Vice–Chairman of Union Planters Corporation and President of the Regional Banking Group. Although Wife has a Bachelor of Arts degree from the University of Wisconsin, she never worked outside the home dur-

ing the marriage. Husband is fifty-six (56) years old and Wife is fifty-four (54) years old. Both Husband and Wife are in good health. The marriage produced two children, both of whom are adults.

The parties separated in January of 1990, when Husband moved out of the family home. Wife filed suit for divorce in June of 1991, on the grounds of irreconcilable differences and inappropriate marital conduct. Wife subsequently amended her complaint to allege adultery as an alternate ground for divorce. Husband's answer admitted irreconcilable differences and adultery. After a lengthy non-jury trial, the court entered a final decree which, *inter alia*, granted a divorce to Wife on the ground of inappropriate marital conduct, divided the marital property, and ordered Husband to pay alimony *in solido* of Nine Thousand Dollars ($9,000) per month for a period of eight (8) years. Husband has appealed and presents three issues for review.

The first issue for review is whether the trial court erred in its valuation of a limited partnership and an annuity. Husband asserts that the trial court erred in its valuation and distribution of the South Highland Limited Partnership and the New York Life annuity.

### 1. South Highland Limited Partnership

■ The trial court valued this limited partnership at Forty-Five Thousand Dollars ($45,000) and awarded it to Husband. Husband argues that the partnership is without value and Wife contends that the partnership is worth Forty-Five Thousand Dollars ($45,000), the amount that Husband paid for his interest in the partnership.

The primary proof presented by Husband as to the value of the partnership was his own testimony which we quote:

Q. Now, Mr. Smith I'll hand to you first of all, before I do that, do you have an opinion as to what value this will be, the value of the South Highland Limited Partnership?

A. Yes ma'am.

Q. What is your opinion?

A. I don't think it has any value.

Q. Have you been advised by anyone that it does have a value?

A. At one point I did.

Q. What, if anything, has changed since the time that you were advised that it did have a value?

A. Tax law.

Q. And what law are you referring to?

A. I don't know.

Wife presented the testimony of David Cuicchi, a certified public accountant and partner in the firm of Cannon & Company. Cuicchi testified that the partnership was worth Forty-Five Thousand Five Hundred Dollars ($45,500). He stated that he arrived at this value by reviewing the partnership's K1 tax returns and a letter written by Husband's financial advisor in November of 1989, which valued Husband's partnership interest at Forty-Five Thousand Five Hundred Dollars ($45,500). He further testified that he was familiar with tax law, and that he was unaware of any changes since 1989 that would have affected the value of the partnership.

■ The valuation of an asset is a question of fact, and on appeal there is a presumption that the trial court's valuation is correct. *Wallace v. Wallace*, 733 S.W.2d 102, 107 (Tenn.App.1987); *Edwards v. Edwards*, 501 S.W.2d 283, 288 (Tenn.App.1973). Furthermore, the trial court has the opportunity to observe the parties and witnesses as they testify, and the trial court's resolution of any conflict in the testimony that rests on the credibility of witnesses is entitled to great weight in this court. *Town of Alamo v. Forcum-James Co.*, 205 Tenn. 478, 327 S.W.2d 47, 49 (1959); *Sisk v. Valley Forge Ins. Co.*, 640 S.W.2d 844, 849 (Tenn.App. 1982). Since the trial court heard this case sitting without a jury, we review the case de novo upon the record with a presumption of correctness of the findings of fact of the trial court. Unless the evidence preponderates against the findings, we must affirm, absent error of law. T.R.A.P. 13(d). In light of the evidence set out above, we cannot say that the record preponderates against the trial court's finding on this issue.

## 2. New York Life Annuity

■ The trial court awarded this annuity to Husband, and valued it at Nine Thousand Three Hundred Fifty–Five Dollars ($9,355). Husband denied the existence of the annuity, and Kirkland Walters, Union Planter's Chief Accounting Officer, also testified that the annuity did not exist. Walters stated that Union Planters used a pre-printed form that listed all of the benefits which Union Planter's officers were entitled to receive. Walters testified that the form had "New York Life Annuity" pre-printed on it because a number of the officers were, in fact, entitled to the annuity. Walters further testified that Husband had not been with Union Planters at the time the New York Life annuity was created, and that Husband did not have a New York Life annuity.

Although Wife concedes that Husband may not have a New York Life annuity, she insists that the annuity exists under a different name. We believe that the record supports Wife's contention. On cross-examination, Walters testified:

Q. Mr. Walters, did I hear you correctly that you just marked through the New York Life annuity but did not mark through the figure?

A. That is correct.

Q. Well, Mr. Walters, does that mean that the figure is still relevant, but it's relevant to some other plan that's in effect for Mr. Smith.

A. Yes.

Q. And what is that other plan?

A. As I recall, that is the amount of the anticipated annual benefit from a former qualified plan which Mr. Smith had been a participant.

Q. And what would that be? Do you have any idea?

A. As I recall, that was an A plan at First Tennessee National Bank.

As stated previously, the factual findings of the trial court are entitled to great weight on appeal. Unless the evidence preponderates against the findings, we must affirm. T.R.A.P. 13(d). In light of the above testimony, we cannot say that the evidence preponderates against the trial court's finding that the annuity existed. In the argument section of her brief, Wife argues that the trial court erred in undervaluing the annuity and asks for half of the annuity's proven current value of $61,480.00. From our review of the record, the trial court's division of marital property, even assuming Wife's valuation of the annuity, is equitable. The judgment of the trial court on this issue is affirmed.

The second issue for review is whether the trial court erred in awarding Wife alimony *in solido* of $864,000.00 payable at $9,000.00 per month for eight years. Husband argues that the amount of the award is excessive, and that, in any event, it should be rehabilitative alimony rather than alimony *in solido.* Wife contends that the amount of alimony awarded is barely sufficient to meet Wife's needs and that Husband's income is more than sufficient to support her needs.

T.C.A. § 36–5–101(d) (Supp.1994) provides:

(1) It is the intent of the general assembly that a spouse who is economically disadvantaged, relative to the other spouse, be rehabilitated whenever possible by the granting of an order for payment of rehabilitative, temporary support and maintenance. Where there is such relative economic disadvantage and rehabilitation is not feasible in consideration of all relevant factors, including those set out in this subsection, then the court may grant an order for payment of support and maintenance on a long-term basis or until the death or remarriage of the recipient except as otherwise provided in subdivision (a)(3). Rehabilitative support and maintenance is a separate class of spousal support as distinguished from alimony in solido and periodic alimony. In determining whether the granting of an order for payment of support and maintenance to a party is appropriate, and in determining the nature, amount, length of term, and manner of payment, the court shall consider all relevant factors, including:

(A) The relative earning capacity, obligations, needs, and financial resources of each party, including income from pen-

sion, profit sharing or retirement plans and all other sources;

(B) The relative education and training of each party, the ability and opportunity of each party to secure such education and training, and the necessity of a party to secure further education and training to improve such party's earning capacity to a reasonable level;

(C) The duration of the marriage;

(D) The age and mental condition of each party;

(E) The physical condition of each party, including, but not limited to, physical disability or incapacity due to a chronic debilitating disease;

(F) The extent to which it would be undesirable for a party to seek employment outside the home because such party will be a custodian of a minor child of the marriage;

(G) The separate assets of each party, both real and personal, tangible and intangible;

(H) The provisions made with regard to the marital property as defined in § 36–4–121;

(I) The standard of living of the parties established during the marriage;

(J) The extent to which each party has made such tangible and intangible contributions to the marriage as monetary and homemaker contributions, and tangible and intangible contributions by a party to the education, training or increased earning power of the other party;

(K) The relative fault of the parties in cases where the court, in its discretion, deems it appropriate to do so; and

(L) Such other factors, including the tax consequences to each party, as are necessary to consider the equities between the parties.

(2) An award of rehabilitative, temporary support and maintenance shall remain in the court's control for the duration of such award, and may be increased, decreased, terminated, extended, or otherwise modified, upon a showing of substantial and material change in circumstances. Reha-

bilitative support and maintenance shall terminate upon the death of the recipient. such support and maintenance shall also terminate upon the death of the payor unless otherwise specifically stated. The recipient of the support and maintenance shall have the burden of proving that all reasonable efforts at rehabilitation have been made and have been unsuccessful.

■ The trial court correctly determined that Wife should be awarded alimony. The record reveals that Husband has a far greater earning capacity, superior education, better job training, and that Wife needs substantial support to maintain the lifestyle that the parties became accustomed to during the marriage. However, we believe that Husband is correct in arguing that the award is excessive.

■ Need and the ability to pay are the critical factors in setting the amount of an alimony award. *Lancaster v. Lancaster*, 671 S.W.2d 501, 503 (Tenn.App.1984); *Aleshire v. Aleshire*, 642 S.W.2d 729, 733 (Tenn.App. 1981). As this Court stated in *Lancaster*:

Alimony is not and never has been intended by our legislature to be punitive. *See McClung v. McClung*, 29 Tenn.App. 580, 198 S.W.2d 820, 822 (1946). Nor do we believe it was intended simply as an award for virtue. It is not designed to serve as an annuity for the wife; or as Professor Clark has stated "[t]he purpose of alimony is to care for the wife's needs after divorce, not to provide her with a life-time profit-sharing plan." H. Clark, *Law of Domestic Relations* § 14.9(4) (1968).

671 S.W.2d at 503.

From the evidence produced at trial, Wife's needs appear to be somewhat overstated. Uncontradicted testimony adduced at trial showed that the parties average monthly spending ranged from Five Thousand Five Hundred Dollars ($5,500) to Six Thousand Five Hundred Dollars ($6,500). The amount spent on living expenses prior to the divorce is an excellent indicator of the amount of support which will be needed after the divorce. *Loyd v. Loyd*, 860 S.W.2d 409, 412 (Tenn.App.1993); *Harrington v. Harrington*, 798 S.W.2d 244, 246 (Tenn.App.

1990). Thus, Wife's claim that her expenses alone will be Nine Thousand Five Hundred Dollars ($9,500) per month appears exaggerated.

Furthermore, Wife was awarded almost Four Hundred Thousand Dollars ($400,000) in liquid assets with very few liabilities as a division of jointly held property. She also received One Million Dollars ($1,000,000) in nonliquid assets, a significant portion of which will become available when Wife reaches retirement age. Another statement made by this Court in *Lancaster* is appropriate here:

> If [Mrs. Lancaster] did nothing but invest these funds in tax free bonds yielding 10%, her annual income would be $50,000 without the least invasion of the corpus. If Mrs. Lancaster really believes she must have all of the luxuries heretofore specified, she has several alternatives. She can make a modest annual invasion of the corpus—and it is of a size that based upon her own list of needed expenditures, several years would be required to significantly reduce the fund. She can attempt to obtain a higher yield on her investments— though there are obviously certain economic risks inherent therein. Or she may go to work on a full or part-time basis.

671 S.W.2d at 503–04.

In light of the facts and law set out above, we believe that the trial court's award of alimony should be reduced to Six Thousand ($6,000) per month. This amount should be more than sufficient to support her in the manner to which she has become accustomed.

Husband next argues that the trial court erred in ordering him to pay alimony *in solido,* rather than rehabilitative alimony. Our Supreme Court, in discussing rehabilitative alimony, stated in *Self v. Self,* 861 S.W.2d 360 (Tenn.1993):

> [T.C.A. § 36–5–101(d)(1) ] reflects an obvious legislative policy that, if possible, the dependency of one ex-spouse on the other be eliminated and both parties be relieved of the impediments incident to the dissolved marriage, and that an ex-spouse be adjudged permanently dependent upon the other only when the court granting the divorce finds that economic rehabilitation is not feasible and long-term support is necessary.

*Id.* at 361. Rehabilitative alimony is intended to enhance an individual's capacity to function independently and with economic security in society. *Isbell v. Isbell,* 816 S.W.2d 735, 739 (Tenn.1991).

We believe that rehabilitative alimony is proper in this case. Wife is an excellent candidate for rehabilitation. Although she has not worked during the marriage, Wife is in good health, and she has a college degree. In light of Wife's needs and the amount of marital property that she received, it appears that Wife should have no difficulty achieving economic security.

The eight year term chosen by the trial court appears to coincide with Husband's productive employment years, during which time he will be able to accumulate further retirement benefits. On the other hand, Wife, if the marriage had continued, could have shared in this accumulation and certainly could be considered disadvantaged to that extent. Allowing Wife rehabilitative alimony will enable her to maintain her standard of living, while at the same time providing for the retirement which she would have enjoyed as Husband's spouse. During this eight year period, Wife will have the opportunity to make the necessary adjustments to her lifestyle and income producing efforts.

Since Wife has the benefit of Husband's productive years, she should also be subject to the risks that she would have had as Husband's spouse. The rehabilitative spousal support award could be subject to modification for changed circumstances, such as Husband's loss of his job or incapacitation by illness or accident. Rehabilitative alimony as provided for by T.C.A. § 36–5–101(d) adequately provides for Wife and the trial court's judgment should be modified to award rehabilitative alimony in the amount of Six Thousand Dollars ($6,000.00) per month for eight years.

Husband's final contention is whether the trial court erred in awarding Wife Six Thousand Dollars ($6,000) in attor-

ney fees. Attorney fee awards are treated as alimony. *Gilliam v. Gilliam,* 776 S.W.2d 81, 86 (Tenn.App.1988). These awards are within the sound discretion of the trial court, and unless the evidence preponderates against that award, it will not be disturbed on appeal. *Storey v. Storey,* 835 S.W.2d 593, 599 (Tenn.App.1992). Although Wife received substantial assets in the property division, the trial court awarded her only a small proportion of the attorney fees that she actually incurred. In light of the testimony adduced at trial, the evidence does not preponderate against this particular award of attorney fees.

The judgment of the trial court is modified to award Wife rehabilitative alimony pursuant to T.C.A. § 36–5–101(d) in the amount of Six Thousand Dollars ($6,000.00) per month for eight years. As modified, the judgment is affirmed and this case is remanded to the trial court for any further necessary proceedings. Costs of this appeal are assessed one-half to each party.

TOMLIN, P.J. (W.S.), and FARMER, J., concur.