IN THE COURT OF APPEALS OF TENNESSEE
WESTERN SECTION AT JACKSON
_____

**MARY ANN UMSTOT,**

    Plaintiff-Counter-Defendant/Appellee,

Vs.
                                         C.A. No. 02A01-9701-CV-00008
                                         Shelby Circuit No. 150200 R.D.

**EDWARD SHIRER UMSTOT,**

    Defendant-Counter-Plaintiff/Appellant.

_____

FROM THE SHELBY COUNTY CIRCUIT COURT
THE HONORABLE KAREN R. WILLIAMS, JUDGE

Daniel Loyd Taylor and James H. Taylor, III of Memphis
For Appellee

Hal Gerber and Karen R. Cicala of Memphis
For Appellant

*REVERSED IN PART, AFFIRMED AS MODIFIED AND REMANDED*

FILED

September 5, 1997

Cecil Crowson, Jr.
Appellate Court Clerk

Opinion filed:

**W. FRANK CRAWFORD,
PRESIDING JUDGE, W.S.**

**CONCUR:**

**DAVID R. FARMER, JUDGE**

**DISSENTS IN PART, CONCURS IN PART
BY SEPARATE OPINION:**

**DAVID G. HAYES, JUDGE**

This is a divorce case. Edward Shirer Umstot (Husband) appeals the order of the trial court awarding a divorce, alimony *in solido*, and child support to Mary Ann Umstot (Wife).

The parties were married on August 16, 1977 and had two children during the marriage.[1] At the time of the divorce, Wife was 52 years old, and Husband was 53 years old. Husband is in good health, but Wife was recently diagnosed with malignant melanoma. She testified that she has a 40% chance of living another five years.

Wife works for Arlington Developmental Center as a medical technologist with a net monthly income of $2,447.76 and at Methodist Hospital with a net monthly income of $200.00. Wife has a defined benefits retirement plan with the State of Tennessee worth $76,309.00.[2] Husband is a research associate for the University of Tennessee-Memphis earning $35,418.96 per year. Husband's net monthly income is $2,271.64, and his retirement benefits are worth $158,563.00. Husband's retirement plan began with a balance of $4,437.00 at the time of the marriage.

The parties owned an unencumbered marital residence. Wife presented expert testimony that the real estate was worth $130,000.00, and Husband presented an expert witness who valued the real estate at $146,571.00.[3] The parties also owned four automobiles, various personal property worth about $13,400.00, two individual retirement accounts each worth $2,715.23, and government savings bonds worth $24,000.00. Each party maintained a separate bank account. Wife inherited an annuity and some General Motors stock during the marriage. In 1980, Wife had an affair with a co-worker, but she terminated the relationship after one year. Husband testified that Wife was verbally abusive to him, was not supportive of him, and withheld affection and sexual relations from him. In 1995, Husband contacted an ex-girlfriend, Grover Lynn Irving, and reestablished a platonic relationship. Wife testified that Husband and Irving talked on the telephone every day. Husband even informed the parties' children about Irving and told Wife that he loved Irving more than he loved Wife. Husband sent $7,500.00 to Irving and incurred long-distance phone bills of $2,500.00 talking to Irving. Wife asked Husband to end this relationship, but he refused. After Wife told Irving to stop calling the house, Husband purchased a beeper so he and Irving could continue to talk.

On September 22, 1995, Wife filed a complaint for divorce alleging irreconcilable differences and inappropriate marital conduct. On October 9, 1995, Husband filed an answer and a counter-complaint. In the answer, Husband admits irreconcilable differences, but denies that he is guilty of inappropriate marital conduct. In his counter-complaint, Husband agrees that the parties have irreconcilable differences and alleges that Wife is guilty of inappropriate marital conduct. On May 6, 1996, Wife filed an answer that denied she was guilty of inappropriate marital conduct.

On June 20, 1996, the trial court entered a final decree of absolute divorce that awarded the divorce to Wife on the grounds of inappropriate marital conduct. The final decree granted custody of the minor children to Wife with liberal visitation to Husband. Husband was ordered to pay child support of $730.00 per month through May 1997, then to pay $479.00 per month. The trial court divided the marital assets and determined that the increase in value of Husband's retirement benefits was marital property. The trial court awarded Husband's interest in the marital residence, valued at $65,000.00, to Wife as alimony *in solido* and awarded $2,500.00 as additional alimony *in solido* for Wife's attorney's fees. Finally, the trial court ordered Husband to pay Wife $1,000.00 in a lump sum as child support to help pay for the extraordinary educational expense of a trip to Europe by one of the parties' daughters.

Husband appeals the judgment of the trial court and presents five issues for review: 1) whether the trial court erred in awarding Wife alimony *in solido*; 2) whether the trial court erred in awarding Wife additional alimony *in solido* to pay her attorney's fees; 3) whether the trial court erred in its determination that the increase in the value of Husband's separate

---

[1] At the time of the divorce, one of the children was eighteen years old and the other child was fifteen years old.

[2] Wife's expert, who valued the plan, testified that a defined benefit plan is a plan in which a benefit is accumulated during one's working years or tenure with a particular employer that will ultimately be paid out upon retirement or the attainment of so many years of service or a certain age.

[3] The trial court accepted the lower value because the parties testified that the property occasionally floods.

property was marital property; 4) whether the trial court erred in deviating from the child support guidelines; and 5) whether the trial court erred in awarding a divorce to Wife only. Since this case was tried by the court sitting without a jury, we review the case *de novo* upon the record with a presumption of correctness of the findings of fact by the trial court. Unless the evidence preponderates against the findings, we must affirm, absent error of law. T.R.A.P. 13(d).

We will first consider Husband's third issue. Because the valuation of Husband's retirement plan affects the division of the marital property, Husband argues that the trial court erred in its determination that the increase in the value of his retirement plan was marital property. The trial court determined that $4,437.00 of the value of Husband's retirement plan was his separate property and that $154,106.00, which represents the increase in value of the retirement plan during the marriage, was marital property. The trial court awarded both the $4,437.00 and the $154,106.00 to Husband. Husband asserts that the trial court allotted only the original value of the pension at the time of the marriage, $4,437.00, as separate property. He argues that the trial court should have also considered the interest earned on that portion as separate property. He contends that only $131,000.00 of the increase in value is martial property, instead of the full $154,106.00, because $23,106.00 of the interest accumulated on the original amount of $4,437.00 and is therefore separate property. T.C.A. § 36-4-121(b)(1)(B) provides:

"Marital property" includes income from, and any increase in value during the marriage, of property determined to be separate property in accordance with subdivision (b)(2) if each party substantially contributed to its preservation and appreciation and the value of vested pension, retirement or other fringe benefit rights accrued during the period of the marriage.

T.C.A. § 36-4-121(b)(1)(B) (1996). Marital property includes retirement benefits, both vested and unvested, that accrue during the marriage. *Cohen v. Cohen*, 937 S.W.2d 823, 830 (Tenn. 1996). An interest in a retirement benefit plan is marital property subject to division under T.C.A. § 36-4-121(a)(1) (1996). *Cohen*, 937 S.W.2d at 830.

In *Cohen*, the Supreme Court reiterated three observations:

1. Only the portion of retirement benefits accrued during the marriage are marital property subject to equitable division.
2. Retirement benefits accrued during the marriage are marital property subject to equitable division even though the non-employee spouse did not contribute to the increase in their value.
3. The value of retirement benefits must be determined at a date as near as possible to the date of the divorce.

*Id*.

Husband argues that the amount of the retirement benefits that accrued during the marriage should not include the amount that accrued as a result of his separate property. He asks this Court to separate the appreciation of the retirement plan into two income streams: one based only on the separate property amount of $4,437.00 and one based on the contributions made to the retirement plan during the marriage.

In an unreported case, this Court addressed the division of retirement funds:

We believe the trial court abused its discretion in awarding Wife $13,311 instead of half of the total of the parties' retirement accounts accumulated after the marriage. The trial court was obviously influenced by his express finding that "a good portion of [the increase] has

been passive income that has accrued since the parties' marriage"; but the "passive" nature of the accrual during the marriage is immaterial. T.C.A. § 36-4-121(b)(1)(B) provides that marital property includes "the value of a vested pension, retirement or other fringe benefit rights accrued during the period of the marriage." (Emphasis Added). This code section does not differentiate between value added by "passive income" and value added by additional contributions during the marriage. The critical determination is whether the value "accrued" during the marriage. In this case, everything in Husband's thrift and profit sharing plan, save the $5,091 in there at the time of the marriage, "accrued" after the marriage.

*Franklin v. Franklin*, No. 03A01-9410-CV-00364, 1995 WL 371573, at *2 (Tenn. App. June 21, 1995). We agree with the reasoning of the *Franklin* Court that the critical determination is whether the value "accrued" during the marriage. The statute is clear that "the value of vested pension, retirement or other fringe benefit rights accrued during the period of the marriage" is marital property. T.C.A. § 36-4-121(b)(1)(B) (1996). In this case, all of Husband's retirement plan, except $4,437.00, accrued during the marriage. The trial court correctly held that $154,106.00 of the retirement plan was marital property.

In his first issue, Husband argues that the trial court erred in awarding alimony *in solido* to Wife. Husband argues that Wife does not need the award, that he does not have the ability to pay the award, and that the court's perception of the relative fault, which can be considered in an award of alimony, unfairly focused on him. In this case, the trial court awarded Husband's interest in the marital residence, valued at $65,000.00, to Wife as alimony *in solido*.

Trial courts have broad discretion in dividing the marital estate upon divorce. *Loyd v. Loyd*, 860 S.W.2d 409, 411 (Tenn. App. 1993); *Lancaster v. Lancaster*, 671 S.W.2d 501, 502 (Tenn. App. 1984).

T.C.A. § 36-5-101(d)(1) provides:

It is the intent of the general assembly that a spouse who is economically disadvantaged, relative to the other spouse, be rehabilitated whenever possible by the granting of an order for payment of rehabilitative, temporary support and maintenance. Where there is such relative economic disadvantage and rehabilitation is not feasible in consideration of all relevant factors, including those set out in this subsection, then the court may grant an order for payment of support and maintenance on a long-term basis or until the death or remarriage of the recipient except as otherwise provided in subdivision (a)(3). Rehabilitative support and maintenance is a separate class of spousal support as distinguished from alimony in solido and periodic alimony. In determining whether the granting of an order for payment of support and maintenance to a party is appropriate, and in determining the nature, amount, length of term, and manner of payment, the court shall consider all relevant factors, including:

(A) The relative earning capacity, obligations, needs, and financial resources of each party, including income from pension, profit sharing or retirement plans and all other sources;

4

(B) The relative education and training of each party, the ability and opportunity of each party to secure such education and training, and the necessity of a party to secure further education and training to improve such party's earning capacity to a reasonable level;

(C) The duration of the marriage;

(D) The age and mental condition of each party;

(E) The physical condition of each party, including, but not limited to, physical disability or incapacity due to a chronic debilitating disease;

(F) The extent to which it would be undesirable for a party to seek employment outside the home because such party will be custodian of a minor child of the marriage;

(G) The separate assets of each party, both real and personal, tangible and intangible;

(H) The provisions made with regard to the marital property as defined in § 36-4-121;

(I) The standard of living the parties established during the marriage;

(J) The extent to which each party has made such tangible and intangible contributions to the marriage as monetary and homemaker contributions, and tangible and intangible contributions by a party to the education, training or increased earning power of the other party;

(K) The relative fault of the parties in cases where the court, in its discretion, deems it appropriate to do so; and

(L) Such other factors, including the tax consequences to each party, as are necessary to consider the equities between the parties.

T.C.A. § 36-5-101(d)(1) (1996).

Need and the ability to pay are the critical factors in setting the amount of an alimony award.

*Smith v. Smith*, 912 S.W.2d 155, 159 (Tenn. App. 1995); *Lancaster*, 671 S.W.2d at 503. In

*Lancaster*, this Court stated:

Alimony is not and never has been intended by our legislature to be punitive. *See McClung v. McClung*, 29 Tenn. App. 580, 198 S.W.2d 820, 822 (1947). Nor do we believe it was intended simply as an award for virtue. It is not designed to serve as an annuity for the wife; or as Professor Clark has stated "[t]he purpose of alimony is to care for the wife's needs after divorce, not to provide her with a life-time profit-sharing plan." H. Clark, *Law of Domestic Relations* § 14.9(4) (1968).

*Id*. The propriety of awarding alimony as well as the adequacy of the amount awarded

depends upon the unique facts of each case. *Butler v. Butler*, 680 S.W.2d 467, 470 (Tenn.

App. 1984). The amount of alimony to be awarded is a matter for the trial court's discretion

in view of the particular circumstances of the case, and the appellate courts are not inclined to

alter the awards except where the record reflects that such discretion has been abused.

*Gilliam v. Gilliam*, 776 S.W.2d 81, 86 (Tenn. App. 1988).

Husband asserts that Wife's net monthly income is more than his, that she has more separate

5

property, and that her income exceeds her expenses. Wife's net monthly income is $2,714.52, and Husband's net monthly income is $2,271.64. In addition, Wife received $730.00 per month until May 1997, and now receives $479.00 per month as child support from Husband. Wife listed her monthly expenses as $3,356.00, which includes the expenses for the children.

In light of the facts that Wife has a greater monthly net income than Husband and has sufficient separate assets, we believe that the award of alimony *in solido* in this case was excessive. After the trial court's award of alimony *in solido*, Wife received $252,873.00 or 58% of the marital estate, and Husband received $181,621.00 or 42% of the marital estate.

We believe that the division of the marital assets in this case should approach a more equitable division. However, we do believe that Wife should be the sole legal owner of the marital residence to avoid any chance of a conflict in the future. Therefore, Wife should be awarded Husband's one-half interest in the marital residence, but in return, Wife should pay $30,000.00, which should be paid as determined by the trial court. After Wife reimburses Husband $30,000.00 for his share of the marital residence, Wife will have received $222,873.00 or 51% of the marital estate, and Husband will have received $211,621.00 or 49% of the estate. We find that this division of the marital assets is more equitable considering the circumstances of this case.

In his second issue, Husband argues that the trial court erred by awarding Wife $2,500.00 as additional alimony *in solido* for her attorney's fees. In determining whether to award attorney's fees, the trial court should again consider the relevant factors in T.C.A. § 36-5-101(d)(1). ***Kincaid v. Kincaid***, 912 S.W.2d 140, 144 (Tenn. App. 1995). When one party demonstrates that it is financially unable to afford counsel, and when the other party has the ability to pay, the court may properly order the other party to pay attorney's fees. ***Id***. An award of attorney's fees is within the sound discretion of the trial court, and unless the evidence preponderates against the award, it will not be disturbed on appeal. ***Id***. A spouse with adequate property and income is not entitled to an award of additional alimony to compensate for attorney's fees and expenses. ***See Duncan v. Duncan***, 686 S.W.2d 568 (Tenn. App. 1984).

In this case, Wife is able to afford counsel. She has separate assets that include $7,500.00 in

6

a bank account. We believe that the trial court should not have awarded Wife the additional alimony *in solido* for her attorney's fees.

In his fourth issue, Husband argues that the trial court erred in deviating from the Tennessee Child Support Guidelines (Guidelines). The trial court ordered Husband to pay $1,000.00 as child support to "help for the extraordinary educational expense of a trip to Europe by one of the minor daughters." Husband argues that an "extraordinary educational expense" implies a necessary expense over and above the amount it would cost to send an average child to school such as special education for the physically or mentally disabled or a more challenging curriculum for a more gifted student. Husband asserts that a decision to spend extra money on education "should be a decision based upon the opinion of a professional that the added expense is needed, not just desired by the custodial parent or the minor child."

The Guidelines provide for the upward adjustment of child support for extraordinary educational expenses:

> (1) Since these percentage amounts are minimums, the court shall increase the award calculated in Rule 1240-2-4-.03 for the following reasons:
> ***
> (c) Extraordinary educational expenses and extraordinary medical expenses not covered by insurance shall be added to the percentage calculated in the above rule.

Tenn. Comp. R. & Regs. tit. 10, ch. 1240-2-4-.04-.04(1)(c) (1994).

In *Dwight v. Dwight*, 936 S.W.2d 945 (Tenn. App. 1996), this Court found that private school tuition is not to be considered as a portion of child support under the Guideline percentages and that child support can be adjusted upward for private school tuition. *Id*. at 950. The choice to send a child to private school is not one that must be made by a professional to determine if the added expense is needed, and the courts have allowed upward deviation for private school tuition without considering whose decision it was to send the child to private school. In addition, private school tuition is never a "necessary" expense, and the Guidelines do not say that the extraordinary educational expense must be "necessary." Likewise, in this case, we do not believe that the decision to send a child to Europe must be made by a "professional," and because extraordinary educational expenses are not limited to "necessary" expenses, the trial court did not err in ordering Husband to pay $1,000.00 of his

daughter's trip to Europe.[4]

Finally, Husband argues that the trial court erred in awarding a divorce to Wife only. He asserts that the trial court ignored the numerous acts of inappropriate marital conduct on the part of Wife. Wife admitted that she had an affair with a co-worker in 1980, and Husband testified that there was an absence of love from Wife in the marriage and that Wife verbally abused him. He stated that Wife never appreciated him or encouraged him. On the other hand, Wife testified that she loved Husband and fully appreciated and cared for him.

The trial court awarded the divorce to Wife on the grounds of inappropriate marital conduct and found that Husband's relationship with Irving precipitated the divorce. Wife testified that Husband told her that he loved Irving more than Wife and that he discussed his new relationship with the parties' children. The evidence showed that Husband lent Irving $7,500.00 and spent $2,500.00 on phone bills. Finally, Husband testified that he happened to find Irving's phone number in the phone book while he was visiting the local library.

When the resolution of the issues in a case depends upon the truthfulness of witnesses, the trial judge who has the opportunity to observe the witnesses in their manner and demeanor while testifying is in a far better position than this Court to decide those issues. *Mays v. Brighton Bank*, 832 S.W.2d 347, 351-52 (Tenn. App. 1992). The weight, faith, and credit to be given to any witness's testimony lie in the first instance with the trier of fact, and the credibility accorded will be given great weight by the appellate court. *Id*. at 352.

We cannot say that the evidence preponderates against the trial court's decision to award a divorce to Wife on the grounds of inappropriate marital conduct.

Accordingly, the judgment of the trial court awarding attorney fees is reversed. The judgment is modified to require Wife to pay Husband $30,000.00 for his equity in the marital home, and, on remand, the trial court shall determine the manner for payment of this sum and any necessary security for the payment. The judgment is affirmed in all other respects. Costs of the appeal are assessed equally to the parties.

_____
**W. FRANK CRAWFORD,**
**PRESIDING JUDGE, W.S.**

_____

[4] We note that $1,000.00 is less than one-half of the cost of the trip.

CONCUR:


_____
**DAVID R. FARMER, JUDGE**


_____
**DAVID G. HAYES, JUDGE**