IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
June 2000 Session

## LOIS LYNN MILLER v. JAMES EARL MILLER

**A Direct Appeal from the Circuit Court for Davidson County**
**No. 98D-1144     The Honorable Muriel Robinson, Judge**

_____

**No. M1999-00724-COA-R3-CV - Filed August 31, 2000**

_____

In this divorce, both Husband and Wife have appealed contesting the trial court's division of marital property and alimony awards. The division of marital property is affirmed, alimony awards are modified, and the case is remanded for a determination of the value of Husband's retirement plan and a proper division thereof.

**Tenn.R.App.P. 3; Appeal as of Right; Judgment of the Circuit Court Modified in Part; Reversed in Part; Affirmed in Part and Remanded.**

W. FRANK CRAWFORD, P.J., W.S., delivered the opinion of the court, in which DAVID R. FARMER, J. and HOLLY KIRBY LILLARD, J., joined.

Jack Green, Nashville, For Appellant, James Earl Miller

Robert L. Jackson, Nashville; Larry Hayes, Jr., Nashville, For Appellee, Lois Lynn Miller

**OPINION**

        This is an appeal from a final decree of divorce by the Circuit Court of Davidson County.  Lois Lynn Miller (hereinafter "Wife") filed a complaint for divorce against James Earl Miller (hereinafter "Husband") on April 8, 1998. After a non-jury trial, the trial court awarded the divorce to Wife on the grounds of inappropriate marital conduct. The final decree awarded alimony *in futuro*, alimony *in solido*, and attorney fees to Wife and classified and divided the parties' marital property. Husband has appealed, and Wife also presents issues for review.

        The parties were married in January of 1988. At the time of the marriage, Husband was 48 years old, and Wife was 58 years old. The marriage lasted 11 years. There were no children of the marriage. After about three years, the marriage began to deteriorate, but the parties continued to live together. The parties did not acquire title or interest to real property but lived in an apartment that

had been occupied by Husband before the marriage. Husband's total income during the marriage was $363,086.00. Wife's total income during the marriage was $214,867.00. Throughout the marriage, Husband paid the rent and utilities. Wife purchased all of their groceries and cleaning supplies, as well her own clothes, car, and gasoline.

Wife filed for divorce alleging inappropriate marital conduct on the part of Husband and irreconcilable differences. A trial was held on September 20, 1999. At the time of trial, Husband was 60 years old, and Wife was 70 years old. Wife testified that she worked throughout the marriage until 1998, when she applied for and was granted social security benefits in the amount of $963.00 per month and medicare coverage. Wife testified to monthly expenses of $1,432.00.

Husband testified that during the marriage, he worked for Avco, which was subsequently known as Textron, and then Aerostructures. Prior to the marriage, Husband had retirement funds and stocks in mutual funds. Husband testified that Wife signed a waiver making Husband's children the beneficiaries of a Lincoln Life account. Husband further stated that all accounts were established prior to the marriage and that neither party contributed to accounts during the marriage. The accounts included a Heritage Federal Credit Union Account, a CD with J.C. Bradford, a CD with Heritage Federal, two Lincoln Life IRAs, and a Textron pension fund.

At the close of proof, the court stated from the bench that the demise of the marriage after 2 ½ years was the fault of both parties, but that they chose to continue to live together and "be basically miserable for 8 years." The court found that during the marriage the parties chose to keep their finances separate, maintaining separate checking accounts, paying separate bills, and keeping separate retirements and 401(K) accounts. The court noted, however, that Wife paid for their shared groceries in addition to her own expenses, allowing the Husband to "compile a sizeable estate." The court found that although Wife made no monetary contributions, she maintained the marital home for 11 years. The trial court noted that Wife is 10 years older than the Husband, is retired, is on a fixed income, and has health problems.

A final decree granting Wife a divorce was entered on September 29, 1999. The final decree divided the property as follows:

> IT IS FURTHER, ORDERED, ADJUDGED and DECREED by the Court that the following non-marital accounts shall be awarded to Mr. Miller: Heritage Federal Credit Union account 402500173 (Money Management Account); Heritage Federal Credit Union account 402500173 (Prime Share Account); Heritage Federal Credit Union account 402500173 (Checking Account); IDEX II Mutual Fund account 1000131757; the J. C. Bradford Certificate of Deposit; the Heritage Federal Certificate of Deposit; Lincoln Life IRA account 96-9148992; and Lincoln Life IRA account 96-900817.

IT IS FURTHER, ORDERED, ADJUDGED and DECREED by the  Court that the following marital assets shall be awarded to Mrs. Miller: $7,000.00 of Dean Witter Fund account 303-043020; Dean Witter Fund account 308-052604-054 (inheritance).

IT IS FURTHER, ORDERED, ADJUDGED and DECREED by the Court that the following accounts are deemed marital property to be equally divided between the parties: Aerostructures Corporation 401 (K) account 402500173-62532, approximately $24,000.00; the Delaware Group Roth IRA account 600005455, approximately $1,856.46; Essential Service Inc. Profit Sharing Sun Trust account 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, approximately $20,920.55; Essential Service Inc. 401(K) account 465402982, approximately $17,668.00. The balances in these accounts shall be divided equally between the parties with the value determined as of September 20, 1999.

Wife was awarded alimony *in futuro* of $850.00 per month until death or remarriage and alimony *in solido* of $65,000.00. She was also awarded $4,500.00 in attorney fees.

Husband appeals, bringing three issues for review:

1. Whether the trial court abused its discretion in awarding Wife alimony *in solido* in the amount of $65,000.00?

2. Whether the trial court abused its discretion in awarding Wife alimony *in futuro* of $850.00 per month?

3. Whether the trial court abused its discretion in awarding Wife her attorneys fees in the amount of $4,500.00?

Wife raises additional issues on appeal:

1. Whether the trial court erred in classifying the following assets as Husband's separate property, thereby failing to make an equitable distribution thereof?

a. The Heritage Federal Credit Union Account, with a value of $2,050.00; the CD with J.C. Bradford, with a value of $79,000.00; and the appreciation in value in the amount of $31,899.00 of Husband's CD with Heritage Federal with value of $98,015.00

b. The appreciation in value in the amount of $120,735.00 of the Idex II Mutual Fund, with value of $136,831.00

c.  Lincoln Life IRA, with value of $71,860.00

d.  Lincoln Life IRA with value of $162,824,00

e.  Husband's vested retirement plan with his current
employer.

2.  Whether Wife should be awarded her attorney's fees on appeal?

Since this case was tried by the trial court sitting without a jury, we review the case *de novo* upon the record with a presumption of correctness of the findings of fact by the trial court.  Unless the evidence preponderates against the findings, we must affirm, absent error of law.  Tenn .R. App. P. 13(d).

Husband contends that the trial court awarded excessive alimony.  He argues that the trial court did not properly consider the three most important elements in determining alimony awards: duration of the marriage, need of the wife, and non-marital assets of the husband.  Husband contends that this was a marriage of short duration, with the parties living as husband and wife for a minimum of two, and a maximum of four years.  Husband further asserts that Wife has social security payments of $963.00 per month, Medicare insurance, an inherited amount[1], with an estate acquired during the marriage of $92,134.27.   Husband contends that Wife has sufficient monies of her own and does not need, nor has she demonstrated the need for,  the amount of alimony awarded by the trial court.  With regard to the trial court's award of $65,000.00 in alimony *in solido*, Husband asserts that the only possible basis for the trial court's award was the value of the stock that he acquired prior to the marriage.

Regarding Husband's Aerostructures Federal Credit Union Account (later called Heritage Federal Credit Union)**,** Wife claims that during the marriage he deposited some of  his paychecks, monies from matured CDs, and disability payments  into that account. Wife contends that the J.C. Bradford CD was acquired during the marriage. Wife asserts that funds in the Credit Union account and funds to purchase the CD were co-mingled with marital funds.  Wife claims to be entitled to an equitable division of the increase in value of Husband's investments during the marriage (particularly his Idex fund)**,** because she made a significant and substantial contribution to this marriage.  Wife also asserts she is entitled to an equitable division of the increase in value of Husband's IRAs.

In her brief, Wife submits that the trial court's award of alimony *in solido* was  most likely in lieu of an equitable division of the increase in value of Husband's assets during the marriage.  She further concedes that it would be improper to award her both alimony *in solido* and an equitable division of Husband's assets.

---

[1]     At trial, the Wife testified to having inherited a total of $26,838.00 from her father's estate  in 1996. Exhibit No. 4 is a copy of checks dated May 21, 1996 and May 14, 1996 totaling that amount.

We address the trial court's division of property first. In **Batson v. Batson,** 769 S.W.2d 849 (Tenn. Ct. App. 1988), the Middle section of the Tennessee Court of Appeals addressed the issue of division of property in a divorce. The first order of business for a trial court in the division of property is to classify the property, giving each party their separate property, and then dividing the marital property equitably. **Batson,** 769 S.W. 2d at 856. (citations omitted).

T.C.A. § 36-4-121 (1996) defines marital property as follows:

> (1) (A) 'Marital property' means all real and personal property, both tangible and intangible, acquired by either or both spouses during the course of the marriage up to the date of the final divorce hearing and owned by either or both spouses as of the date of filing of a complaint for divorce, except in the case of fraudulent conveyance in anticipation of filing, and including any property to which a right was acquired up to the date of the finial divorce hearing, and valued as of a date as near as reasonably possible to the final divorce hearing date.
> (B) 'Marital property' includes income from, and any increase in value during the marriage of, property determined to be separate property in accordance with subdivision (b)(2) if each party substantially contributed to its preservation and appreciation and the value of vested pension, retirement or other fringe benefit rights accrued during the period of the marriage.
> ( C ) As used in this subsection, "substantial contribution" may include, but not be limited to, the direct or indirect contribution of a spouse as homemaker, wage earner, parent or family financial manager, together with such other factors as the court having jurisdiction thereof may determine.

Specifically, Wife first takes issue with the classification of the Heritage Federal Credit Union Accounts, the Bradford CDs, and the Heritage CD as Husband's separate property. The record shows that at the time of the marriage, Husband had a credit union account known as Aerostructures Federal Credit Union. In 1991, that credit union account became the Heritage Federal Credit Union. Husband testified to buying CD's with money from the Heritage Federal Account during the marriage, including the J.C. Bradford CD and the Heritage CD. Wife contends that Husband's activity with regard to the Heritage Federal Credit Union Account constitutes a commingling of separate funds in the Heritage Federal Credit Union Account with marital funds, thereby rendering the $2,050.00 balance in the account marital property and subject to an equitable division by the trial court.

In response to a direct question from the court, Husband testified that neither he nor Wife made any contribution to these accounts during the marriage. The trial court evidently accredited this testimony. The weight, faith, and credit given to the testimony by the trial court in the first instance is to be given great weight on appeal. **See Haverlah v. Memphis Aviation**, 674 S.W.2d

297, 302 (Tenn. Ct. App. 1984). The evidence does not preponderate against the trial court's findings that these accounts are Husband's separate property.

Next, Wife asserts that the Idex fund, valued at approximately $19,000.00 at the time of the marriage and approximately $136,814.00 at the time of trial, should have been classified as marital property by the trial court and equitably divided. Wife contends that she made a significant and substantial contribution to the marriage and that her efforts made it possible for Husband to allow his investments to grow over the 11 years of the marriage. Wife asserts that the trial court should have awarded her an equitable division of the approximately $117,814.00 increase in value of Husband's Idex Account.

Regarding T.C.A. § 36-4-121 (b)(1), our Supreme Court stated in *Ellis v.Ellis,* 748 S.W. 2d 424, 427 (Tenn. 1988), that the only condition imposed for treating any increase in the value of property during the marriage as marital property is that "if each party substantially contributed to its preservation and appreciation." Whether the non-owner spouse made a substantial contribution to an increase in equity is a question of fact. *Cohen v. Cohen*, 937 S.W. 2d 823, 833 (Tenn. 1996) (citing *Brown v. Brown*, 913 S.W. 2d 163, 167 (Tenn. Ct. App. 1994)). In *Wade v. Wade,* 897 S.W.2d 702 9Tenn. Ct. App. 1994), the Court held that the appreciation of stocks owned by the husband prior to the marriage was marital property due to wife's substantial contribution to the preservation and appreciation of the stocks. In so ruling, the *Wade* Court found that the husband's stock appreciated while the wife supported the husband with her earnings, and made indirect contributions as a homemaker, wage earner, parent, and family financial manager, and also that she made direct contribution to the managing of the stocks. *Id.* at 714 - 15. In *Smith v. Smith*, 709 S.W.2d 588 (Tenn. Ct. App. 1985), the Court held that the wife's efforts as a wife, homemaker, and mother alone contributed to the value of the husband's law practice, thereby recognizing indirect contributions of a non-owner spouse as a substantial contribution. *Id*. at 591. *See also Batson v. Batson,* 769 S.W. 2d at 858.

In the instant case, the parties lived virtually separate lives for all but the first two years of the marriage. Wife testified that she furnished groceries and cooked most of the meals. Husband testified that he paid for the rent and utilities. Other than these contributions by both parties, they pursued their individual ways. Wife supported herself, made her own investments, and generally made her own way.

By the same token, Husband did likewise. There is no proof that Husband made any contribution to this fund from his marital income. Under the peculiar facts of this case, we do not find that the evidence preponderates against the trial court's finding that the increase in value of the Idex fund is not marital property.

Wife also takes issue with the trial court's treatment of the two Lincoln Life IRA accounts as separate property of Husband. Husband testified that one Lincoln Life IRA, valued at approximately $72,910.00 at the time of trial, was valued at approximately $34,259.00 when he rolled it over in January of 1995 from the Idex fund. As previously noted, the Idex fund and its increase in value is Husband's separate property, and thus the roll-over to the Lincoln Life IRA

constitutes Husband's separate property. As to the other Lincoln Life IRA, Husband testified that $38,300.00 was transferred from a 401(K) plan in 1996. The funds in the 401(K) plan included contributions made by Husband from his salary during the period from 1988 to 1996. Under these circumstances, the contributions of the 401(K) plan constitute marital property.

Finally, Wife contends Husband has two traditional retirement accounts: the Avco Plan, which accumulated when the company that employs him was know as Avco, and the Textron Plan, which began accumulating after his employer changed its name to Textron, around the time of the marriage. Wife asserts that Husband admitted that all of the monthly payments after retirement to which he is entitled under the Textron Plan were accumulated during the marriage. Wife argues that $200.00, the portion of Husband's retirement benefit attributable to the Textron plan, is marital property and that she should therefore receive an equitable portion of that amount, $100.00. The trial court did not address either of these retirement accounts specifically in its final decree.

Marital property includes the value of "pension retirement or other fringe benefit rights accrued during the period of the marriage," T. C. A. § 36-4-121(b)(1)(B), with no regard to the other spouse's contribution during the marriage. *Cohen v. Cohen,* 937 S.W. 2d at 830; *Kendrick v. Kendrick*, 902 S.W.2d 918, 926 (Tenn. Ct. App. 1994). Consequently, marital property includes any increase during the marriage in the value of retirement or pension rights, regardless if growth be through passive growth, or through either party's direct or indirect contribution. *Umstot v. Umstot*, 968 S.W.2d 819, 822 (Tenn. Ct. App. 1997).

Only the portion of retirement benefits accrued during the marriage are marital property subject to equitable division. The value of retirement benefits must be determined at a date as near as possible to the date of the divorce. *Cohen v. Cohen*, *supra*.

Husband testified the Textron retirement plan was begun sometime close to the time of the marriage. Husband also testified that under both plans he would receive approximately $725.00 per month in benefits. Approximately $525.00 per month would come from the old Avco Plan, and the remaining $200.00 would be derived from the Textron plan.

It appears from the record that Husband's retirement plan with Textron accrued during the marriage, but we cannot ascertain from the record the value of that accrual. Upon remand, the court should determine the value of this marital asset and make a proper division thereof.

Husband's first issue is whether the trial court abused its discretion in awarding Wife alimony *in solido* in the amount of $65,000.00. There is no clear statement in the trial court's final decree, or in the record, as to the basis of the $65,000.00 figure. In her brief, Wife submits that the trial court's award of alimony *in solido* was most likely in lieu of and in the nature of an equitable division of the increase in value of Husband's assets during the course of this marriage. If that is the case, we would agree with Wife that it would be improper to award her both alimony *in solido* and an equitable division of Husband's assets.

T.C.A. § 36-5-101(d)(1) mandates that all relevant factors be considered by the trial court in determining the nature, amount, length of term, and manner of payment of alimony, and enumerates

factors to be included in that consideration.  Need and the ability to pay are the critical factors in setting the amount of an alimony award.  *Umstot v. Umstot,* 968 S.W.2d at 823; (citing *Smith v. Smith,* 912 S.W.2d 155, 159 (Tenn. Ct. App. 1995)).  "The propriety of awarding alimony as well as the adequacy of the amount awarded depend upon the unique facts of each case." *Id.* (citing *Butler v. Butler,* 680 S.W.2d 467, 470 (Tenn. Ct. App. 1984)).  The amount of alimony to be awarded is a matter for the discretion of the trial court and should not be altered on appeal except where the record reflects that discretion has been abused.  *Id.*  In view of the nature of the parties' relationship and with an award of alimony *in futuro*, we see no real entitlement to alimony *in solido*.

Husband's second issue, whether the trial court abused its discretion in awarding the Wife $850.00 per month alimony *in futuro,* we again refer to the relevant statue, T.C.A. § 36-5-101(d) (1).  As the court noted in the final decree of divorce:

> Mr. Miller is gainfully employed and is ten years younger than Ms. Miller.  She's retired.  She's on fixed income.  She's still his wife.  She's ten years older.  She's got health problems that she's described to the Court ....So they have just kind of existed in this state for the last 8 years.  But they're still married until the gavel falls.

According to Wife's income and expense statement, she has ongoing expenses of $1,432.00 per month.  Wife receives monthly social security benefits of $963.00.  Wife testified  that although this marriage deteriorated after the first two years, the parties remained married.  Therefore the duration of the marriage is of 11 years, which she contends is not a short marriage. Wife testified that she was supportive of Husband's attempts as a recovering alcoholic, to remain sober by attending meetings and was otherwise supporting his sobriety through the marriage.  Wife asserts that despite her support, Husband stopped communicating with her in 1990/1991 and began verbally abusing her, often using profane language in her presence.  Wife asserts that Husband rebuffed Wife's attempts to rekindle the marriage or to seek counseling for the marriage.

Considering the fact that the court awarded this divorce to Wife, her fixed income, her need, her age, and Husband's ability to pay, an award of alimony *in futuro* is proper.  However, we believe a more appropriate award, after consideration of all factors, is $500.00 per month.

Husband's third issue is whether the trial court erred in granting the Wife an award of $4,500.00 in attorney's fees.  In determining whether to award attorney fees, the trial court should consider the relevant factors enumerated in T.C.A. § 36-5-101(d)(1).  *See Umstot v. Umstot,* 968 S.W.2d at  824; (citing *Kincaid v. Kincaid*, 912 S.W. 2d 140, 144 (Tenn. Ct. App. 1995)).  Where one party shows that it is financially unable to afford counsel, and the other party has the ability to pay, that trial court may properly order the other party to pay attorney's fees. *Id.* Such an award is within the sound discretion of the trial court and should not be disturbed on appeal, unless the evidence preponderates against the award. *Id.*  A party with adequate income and property is not entitled to an additional award of alimony to compensate for attorney fees and expenses. *Id.* (citing *Duncan v. Duncan,* 686 S.W.2d 568 (Tenn. Ct. App. 1984)).

These awards are appropriate, however, only when the spouse seeking them lacks sufficient funds to pay his or her own legal expenses, ***Houghland v. Houghland,*** 844 S.W.2d 619, 623 (Tenn. Ct. App.1992); ***Ingram v. Ingram,*** 721 S.W.2d at 264, or would be required to deplete his or her resources in order to pay these expenses. ***Harwell v. Harwell,*** 612 S.W.2d 182, 185 (Tenn. Ct. App. 1980).

***Brown v. Brown,*** 913 S.W.2d 163, 170.(Tenn. Ct. App. 1994).

Where one party has been awarded additional funds for maintenance and support and such funds are intended to provide the party with a source of future income, the party need not be required to pay legal expenses by using assets that will provide for future income. ***Batson v. Batson***, 769 S.W. 2d at 862 (Tenn. Ct. App. 1988). Thus, where the wife has demonstrated that she is financially unable to procure counsel, and where the husband has the ability to pay, the court may properly order the husband to pay the wife's attorneys fees. ***Harwell v. Harwell,*** 612 S.W.2d 182, 185 (Tenn. Ct. App.1980); ***Palmer v. Palmer,*** 562 S.W.2d 833, 839 (Tenn. Ct. App.1977); ***Ligon v. Ligon,*** 556 S.W.2d 763, 768 (Tenn. Ct. App.1977).

In the instant case, the trial court awarded Wife a portion of her attorney fees, stating in pertinent part:

> IT IS FURTHER, ORDERED, ADJUDGED and DECREED by the Court that Mr. Miller has not been forthright on getting together information, therefore, counsel for Mrs. Miller had to do a lot of work, therefore, the court does award attorney fees to Robert L. Jackson and Larry G. Hayes in the some of $4,500.00, which fee shall be Taxed to the Defendant, James Earl Miller, for the representation of the wife, along with the cost of this cause, for all of which execution may issue, if necessary.

In addition, the record indicates that Wife is not able to afford counsel without drawing on funds intended for her future living expenses. She is retired and on a fixed income, therefore there is no expectation of increased earnings in the future. We believe that the evidence does not preponderate against the trial court finding and award to Wife of $4,500.00 for her attorney's fees.

In summary, the trial court's final decree is modified to award alimony *in futuro* of $500.00 per month. The trial court's award of $65,000.00 as alimony *in solido* is reversed, and the case is remanded to the trial court for a determination of the value of Husband's retirement plan with Textron and the value of the Lincoln Life IRA rolled over from a 401 (K) plan. The court should then make an equitable division thereof. The decree of the trial court in all other respects is affirmed. Each party will pay their own attorney fees on appeal, and costs of the appeal are assessed equally to the parties, Lois Lynn Miller and James Earl Miller.

_____
W. FRANK CRAWFORD, PRESIDING JUDGE, W.S.