# IN THE COURT OF APPEALS OF TENNESSEE
## AT JACKSON

**FILED**

December 14, 1999

Cecil Crowson, Jr.
Appellate Court Clerk

JANET CAROL SCARBROUGH,

    Appellant,

Vs.

EDD SHERROD SCARBROUGH,

    Appellee.

Weakley Chancery No. 14884
C.A. No. W1998-00167-COA-R3-CV

---

## FROM THE WEAKLEY COUNTY CHANCERY COURT
## THE HONORABLE WILLIAM MICHAEL MALOAN, JUDGE

James H. Bradberry of Dresden
For Appellant

L. L. Harrrell, Jr., of Trenton
For Appellee

*AFFIRMED AS MODIFIED*

Opinion filed:

W. FRANK CRAWFORD,
PRESIDING JUDGE, W.S.

CONCUR:

ALAN E. HIGHERS, JUDGE

DAVID R. FARMER, JUDGE

This is a divorce case. Plaintiff, Janet Carol Scarbrough (Wife), and defendant, Edd Sherrod Scarbrough (Husband), married August 19, 1977. Each of the parties had been married previously, and each of them had one child. Wife had a daughter, Mitzi, and Wife had custody of this child. Husband had a son, Lynn, and the child's mother had custody of Lynn. In 1981, a son, Todd, was born to the Scarbroughs.

At the time of the marriage, Husband was a farmer and owned approximately 300 acres of farm land, most of which he inherited. During the marriage, Husband and his brother, Billy Scarbrough, engaged in a farming partnership and owned the farmland together. The arrangement was successful, and they accumulated a large amount of farm property, most of which was titled in the names of the brothers and their wives. Shortly after the marriage, Wife attended beauty school and eventually became a co-owner of a beauty shop in McKenzie, Tennessee. Husband's farming partnership continued until it was terminated in 1994, and the property was divided. In the division of the property, Husband took title to his part of the property in his name alone. Shortly before the divorce suit was filed, Husband owned approximately 800 acres of land, but in November 1996, Husband deeded 488 acres of land to his son, Lynn, retaining a life estate in the property, for the consideration of $150,000.00, which was the balance due on the mortgage secured by the properties.

Wife filed for divorce on December 3, 1996, alleging that the parties had irreconcilable differences and that Husband was guilty of inappropriate marital conduct. Husband counter-claimed on the same grounds. After a non-jury trial, a "Divorce Decree" was entered by the trial court on July 16, 1998. The trial court granted both parties a divorce pursuant to T.C.A. § 36-4-129. Joint custody of the parties' child was awarded to Wife designated as the primary custodial parent, and Husband was awarded visitation. Husband was ordered to pay child support in the amount of $797.00 per month. As a division of marital property, Husband was awarded the real estate and other property totaling in value of $294,450.00, and Wife was awarded property totaling $52,247.00. In order to make an equitable division, the court further awarded Wife the sum of $120,000.00 to be paid by Husband. On August 31, 1998 the court modified the Divorce Decree to give Husband a $3,000.00 credit for child support paid by him while the child was in his custody. The court also deducted the $76,000.00

debt on farm equipment from the marital estate and ordered Husband to pay Wife $100,000.00, instead of $120,000.00 as previously ordered.

Both parties appeal the decree of the trial court and present the following issues for review:

Wife's issues:

> 1. Whether the trial court erred in declaring the parties to be divorced pursuant to T.C.A. § 36-4-129(b).
>
> 2. Whether the trial court erred in not considering the potential income available to Husband from a life estate in approximately 500 acres of farmland when awarding child support.
>
> 3. Whether the trial court erred in failing to award Wife periodic alimony.
>
> 4. Whether the trial court erred in failing to award Wife attorney fees.
>
> 5. Whether the trial court erred in awarding Wife less than 25% of assets accumulated during marriage.

Husband's issues:

> 1. Whether the court made a proper division of property between the parties considering the debts and encumbrances upon said property.
>
> 2. Whether Husband is entitled to credit for alimony paid by him against any sum owing Wife?
>
> 3. Whether Husband is entitled to credit for child support Wife should have paid?

Since the case was tried by the court sitting without a jury, we review the case *de novo* upon the record with a presumption of correctness of the findings of fact by the trial court. Unless the evidence preponderates against the findings, we must affirm, absent error of law. T.R.A.P. 13(d).

Fault

Wife asserts that the trial court erred in granting both parties a divorce pursuant to T.C.A. § 36-4-129(b) instead of assigning fault to Husband. T.C.A. § 36-4-129(b) states:

> The court may, upon such stipulation or upon proof, grant a divorce to the party who was less at fault, or, if either or both parties are entitled to a divorce, declare the parties to be divorced, rather than awarding a divorce to either party alone.

Wife argues that the record contains evidence of Husband's jealous and hostile behavior, which she believes led to the marriage's failure. Wife further contends that Husband was having an extramarital affair. Husband denies that he was having an affair while the parties were living together, and he argues that he tried to salvage the marriage by attending marriage counseling.

Both parties attribute the failure of the marriage to the other, and it is difficult to determine which party was more at fault. However, after reviewing the evidence *de novo* in accordance with T.R.A.P. 13(d), we cannot say that the evidence preponderates against the trial judge's conclusion that both parties contributed to the breakup of the marriage. Therefore, the trial court did not err in declaring the parties divorced in accordance with T.C.A. § 36-4-129(b).

Child Support

We will consider Wife's second issue and Husband's third issue together. In the Divorce Decree, the trial court ordered Husband to pay Wife child support for the parties child. In the decree, the trial court stated:

> Child support is set according to the Child Support Guidelines at $796 per month, plus Clerk and Master's commission, based on an annual gross income of $68,850 (1997 tax return: net profit of $14,565 plus depreciation of $49,287), first payment to be due on August 1, 1998.

Child support in Tennessee is statutorily governed by T.C.A. § 36-5-101 (Supp.1998). Section 36-5-101(e)(1) provides that "[i]n making its determination concerning the amount of support of any minor child or children of the parties, the court shall apply as a rebuttable presumption the child support guidelines as provided in this subsection." The guidelines referenced are promulgated by the Department of Human Services in Chapter 1240-2-4 of the Official Compilation of the Rules and Regulations of the State of Tennessee.

The presumptively correct amount of support is based upon the obligor's net income. Gross income is calculated in accordance with Tenn. Comp. R. & Regs. Ch. 1240-2-4-.03(3), and net income is calculated by subtracting only the deductions allowed by rule 1240-2-4-.03(4). After net income is determined, the presumptively correct amount of support is calculated by taking the percentage of net income that is specified in rule 1240-2-4-.03(5) for the number of children the obligor is to support.

For one child, the percentage of net income is 21%. Tenn. Comp. R. & Regs. Ch. 1240-2-4-.03(5).

Tenn. Comp. R. & Regs. Ch. 1240-2-4-.03(3)(a) provides, in pertinent part, as follows:

> Gross income shall include all income from any source (before taxes and other deductions), whether earned or unearned, and includes but is not limited to, the following: wages, salaries, ... and income from self-employment. Income from self-employment includes income from business operations and rental properties, etc., less reasonable expenses necessary to produce such income....

Wife asserts that Husband's transfer of 488 acres of farmland to his son, Lynn, while retaining a life estate, was a sham transaction and that the income from the life estate should be included in the child support determination. She points out that the trust deed on the property was executed by both Husband and his son, and that his son used Husband's machinery on the land. However, she put on no proof as to potential income from the life estate.

Husband asserts that the transaction was valid and meant to relieve himself of substantial debt. Husband testified that he received no income from the property and that Lynn required all of the income from the property to pay the $150,000 debt. Lynn, Husband's son, testified that the only reason Husband signed the trust deed was because of the life estate. Lynn further stated that the debt was entirely his and that he had paid $7,000 plus interest on the debt at the time of trial.

From the record, we are unable to conclude that the court erred in failing to include income from the life estate. There is no proof in the record that Husband received any income from the property or that the transaction was set up to defraud Wife. Considering the testimony of Husband and his son, Lynn, the decision of the trial court with regard to the amount of child support is upheld.

As to Husband's issue, Husband claims that he is entitled to credit for child support wife should have paid him. Wife argues that there was never any support set by the court upon which she was the obligor. The trial court gave Husband credit for $3,000 child support he paid while the son resided with him, and we find no error in this regard.

Alimony

We will consider Wife's third issue and Husband's second issue together. Wife claims that the trial court erred by refusing to order Husband to pay her periodic alimony. Wife asserts that in 1995 her income was approximately $35,000.00 annually, but that she cut back her working hours at Husband's request, and as a result her income has declined to $25,000.00 per year. Wife further asserts that she has personal living expenses of approximately $30,000.00 per year. Wife argues that if she is not awarded periodic alimony, she will have to use the money received from the division of marital assets to pay expenses. She further contends that if she invested the $120,000.00, she could only expect to earn a maximum of ten percent, or $12,000.00 per year. Wife further contends that Husband was awarded a substantial part of the marital estate and that he has the ability to pay.

On the other hand, Husband asserts that Wife is not entitled to an award of alimony. He contends that Wife is in excellent health and is an established beautician capable of supporting herself and expanding her business if she desires. Husband further argues that Wife's income is higher than claimed as she only reports a portion of the cash received in her business. Husband also raises the issue and contends that he is entitled to a credit for alimony paid by him against any sums owing Wife.

In Tennessee, there is a preference for rehabilitative alimony. T.C.A. § 36-5-101 (d)(1) (Supp. 1998). ***Aaron v. Aaron***, 909 S.W.2d 408, 410 (Tenn.1995). The factors used to determine the proper amount of maintenance and support are set out in T.C.A. § 36-5-101(d)(1):

> (d)(1) It is the intent of the general assembly that a spouse who is economically disadvantaged, relative to the other spouse, be rehabilitated whenever possible by the granting of an order for payment of rehabilitative, temporary support and maintenance. Where there is such relative economic disadvantage and rehabilitation is not feasible in consideration of all relevant factors, including those set out in this subsection, then the court may grant an order for payment of support and maintenance on a long-term basis or until the death or remarriage of the recipient except as otherwise provided in subdivision (a)(3). Rehabilitative support and maintenance is a separate class of spousal support as distinguished from alimony in solido and periodic alimony. In determining whether the granting of an order for payment of support and maintenance to a party is appropriate, and in determining the nature, amount, length of term, and manner of payment, the court shall consider all relevant factors, including:
>
> (A) The relative earning capacity, obligations, needs,

and financial resources of each party, including income from pension, profit sharing or retirement plans and all other sources;

(B) The relative education and training of each party, the ability and opportunity of each party to secure such education and training, and the necessity of a party to secure further education and training to improve such party's earning capacity to a reasonable level;

(C) The duration of the marriage;

(D) The age and mental condition of each party;

(E) The physical condition of each party, including, but not limited to, physical disability or incapacity due to a chronic debilitating disease;

(F) The extent to which it would be undesirable for a party to seek employment outside the home because such party will be custodian of a minor child of the marriage;

(G) The separate assets of each party, both real and personal, tangible and intangible;

(H) The provisions made with regard to the marital property as defined in § 36-4-121;

(I) The standard of living of the parties established during the marriage;

(J) The extent to which each party has made such tangible and intangible contributions to the marriage as monetary and homemaker contributions, and tangible and intangible contributions by a party to the education, training or increased earning power of the other party;

(K) The relative fault of the parties in cases where the court, in its discretion, deems it appropriate to do so; and

(L) Such other factors, including the tax consequences to each party, as are necessary to consider the equities between the parties.

"The amount of alimony to be allowed in any case is a matter for the discretion of the trial court in view of the particular circumstances." *Ingram v. Ingram*, 721 S.W.2d 262, 264 (Tenn. Ct. App. 1986). In determining the amount of alimony, "the real need of the spouse seeking the support is the single most important factor. In addition to the need of the disadvantaged spouse, the courts most often consider the ability of the obligor spouse to provide support." *Cranford v. Cranford*, 772 S.W.2d 48, 50 (Tenn. Ct. App. 1989) (citations omitted). "If one spouse is economically disadvantaged compared to the other, the courts are generally inclined to provide some

type of support." ***Batson***, 769 S.W.2d at 861.

As this Court stated in ***Lancaster v. Lancaster***, 671 S.W.2d 501 (Tenn. Ct. App. 1981):

> Alimony is not and never has been intended by our legislature to be punitive. Nor do we believe it was intended simply as an award for virtue. It is not designed to serve as an annuity for the wife; or as Professor Clark has stated "[t]he purpose of alimony is to care for the wife's needs after divorce, not to provide her with a life-time profit-sharing plan."

***Id.*** at 503 (citations omitted).

The trial court correctly determined that Wife should not be awarded alimony *in futuro*. However, we feel that Wife is an appropriate candidate for rehabilitative alimony. She has worked and maintained a successful career as a beautician and in the latter stages of the marriage reduced her work time in order to salvage the marriage. In light of Wife's declined business and the amount of marital property she received, we feel that it is appropriate to award rehabilitative alimony to allow Wife to regain her business. Wife has shown a need for alimony, and Husband has the ability to pay. ***See Cranford***, at 50. Considering the economic status of the parties and their relative earning capacities, we believe rehabilitative alimony in the amount of $700.00 per month for three years is appropriate. The alimony payments will commence on the first day of the month following the filing of this Opinion.

We disagree with Husband's argument that he should receive credit for alimony previously paid by him. The payments were intended to support Wife until the time that the divorce became final. *Pendente lite* awards are not deducted from permanent alimony awards.

Attorney's Fees

For her fourth issue, Wife asserts that she should have been awarded attorney's fees. She argues that Husband's superior earning power coupled with his retaining a larger portion of the marital estate puts him in a better financial position to pay her attorney's fees. Wife asserts that she has been economically disadvantaged by this divorce, that she can not pay the fees and that she should not have to use her estate in order to satisfy the attorney's fees. She further argues that Husband increased the fees by not being forthcoming with his assets. To the contrary, Husband contends that

denial of wife's attorney's fees was appropriate. He argues that Wife should have used the temporary alimony, as well as, the $3,000 child support received when the child was not living with her to keep her attorney's fees current. Husband also argues that Wife prolonged the proceeding before the trial court.

Attorney's fee awards are treated as alimony. *Gilliam v. Gilliam*, 776 S.W.2d 81, 86 (Tenn. Ct. App. 1988). In determining whether to award attorney's fees, the trial court should consider the relevant factors in T.C.A. § 36-5-101(d)(1). *Houghland v. Houghland*, 844 S.W.2d 619, 623 (Tenn. Ct. App. 1992). Where the wife demonstrates that she is financially unable to afford counsel, and where the husband has the ability to pay, the court may properly order the husband to pay the wife's attorney's fees. *Id.*; *Harwell v. Harwell*, 612 S.W.2d 182, 185 (Tenn. Ct. App. 1980). The award of attorney's fees is within the sound discretion of the trial court, and unless the evidence preponderates against the award, it will not be disturbed on appeal. *Lyon v. Lyon*, 765 S.W.2d 759, 762-63 (Tenn. Ct. App. 1988).

Considering the record as a whole, we do not feel that the trial court abused its discretion in denying an award of attorney's fees. Wife is gainfully employed and should be able to make payments on her attorney's fees.

Marital Estate

Both Wife and Husband take issue with the trial court's division of marital property. Wife asserts that the trial court erred in awarding her less than 25% of the assets assimilated during marriage. Husband argues that the trial court erred in the division by not considering the debts and encumbrances upon the property.

Trial courts have broad discretion in dividing the marital estate upon divorce. *Kincaid v. Kincaid*, 912 S.W.2d 140, 142 (Tenn. Ct. App. 1995). In *Batson v. Batson*, 769 S.W.2d 849 (Tenn. App. 1988), this Court discussed the equitable division of marital property:

> Tenn. Code Ann. § 36-4-121(a) provides that marital property should be divided equitably without regard to fault. It gives a trial court wide discretion in adjusting and adjudicating the parties' rights and interests in all jointly owned property. *Fisher v. Fisher*, 648 S.W.2d 244, 246 (Tenn. 1983). Accordingly, a trial court's division of the marital estate is entitled to great weight on appeal, *Edwards v. Edwards*, 501 S.W.2d 283, 288 (Tenn. Ct. App. 1973), and should be presumed to be proper unless the evidence preponderates otherwise. *Lancaster*

> *v.Lancaster,* 671 S.W.2d 501, 502 (Tenn. Ct. App. 1984);
> *v. Hardin*, 689 S.W.2d 152, 154 (Tenn. Ct. App. 1983).
>
> A trial court's division of marital property is to be guided by the factors contained in Tenn. Code Ann. § 36-4-121(c). However, an equitable property division is not necessarily an equal one. It is not achieved by a mechanical application of the statutory factors, but rather by considering and weighing the most relevant factors in light of the unique facts of the case.

*Batson*, 769 S.W.2d at 859.

Wife claims that she received less than 25% of the marital estate. However, this calculation includes the 488 acres Husband transferred to his son, Lynn. The trial court found that this property was Husband's separate property. Wife argues this property should be included because 452 acres were acquired during the marriage and that she acquiesced in Husband's taking title alone because Husband assured her "it didn't make a difference, that she [would] still be his wife."

Primarily Wife argues that the trial court erred in not finding a value for the Husband's life estate in the property conveyed to his son and including the value as marital property to be divided. There is evidence in the record that the involved real estate is valued in excess of $400,000.00 without considering the value of the life estate. There is also evidence in the record that the life estate is valued in excess of $200,000.00. It is uncontroverted that Husband conveyed the properties to his son in consideration of the assumption by the son of the indebtedness on the real estate in the amount of $150,000.00. Wife asserts that she does not seek to have the conveyances to the son set aside; she does want the value established for the life estates to be declared marital property.

It appears that the transfers to the son occurred after Wife had commenced or was about to commence divorce proceedings. It also appears that the majority of the involved property was acquired during the parties' marriage. Under the circumstances, the life estates owned by Husband should be considered marital property, a value placed thereon, and equitably divided. The record is simply not sufficient for this Court to undertake this task. This is a proper case for remand to the trial court pursuant to the provisions of T.C.A. § 27-3-128 (1980).

Wife also asserts that the court failed to recognize a number of assets. Specifically, $46,247.97 in profits on the 1996 crops. Husband testified that there were

no profits as he used all of the proceeds from the 1996 crops to pay expenses. Husband testified that he paid a $175,000.00 note at the Community Bank of Greenfield for the crop loan. He further stated that he had expenses of: $1,800.00 for crop transportation, $5,550.00 for labor, $6,000.00 for property taxes, and repair costs for equipment damaged during the 1996 crop year. Wife also asserts that the court failed to recognize the joint bank account at the Greenfield Banking Company existing at the time of the separation. Husband admits that he closed the account, but insists that this was the parties' farming account out of which all of the proceeds from the 1996 farm year were deposited and bills were paid.

Wife further asserts that the court failed to accurately value Husband's truck and Wife's car. Specifically, she argues that Husband's figures increased the value of her automobile and deflated the value of Husband's truck. The trial court heard testimony from Husband and Wife's witness as to the value of Husband's truck. The trial court apparently believed Husband's estimations, and there is no evidence in the record which preponderates against this finding. When the resolution of the issues in a case depends upon the truthfulness of witnesses, the trial judge who has the opportunity to observe the witnesses in their manner and demeanor while testifying is in a far better position than this Court to decide those issues. *McCaleb v. Saturn Corp.*, 910 S.W.2d 412, 415 (Tenn. 1995); *Whitaker v. Whitaker*, 957 S.W.2d 834, 837 (Tenn. Ct. App. 1997).

As to Husband's final issue, he argues that the trial court should have considered the $176,990.00 debt owed to Greenfield Banking Company, which is secured by a mortgage on the lands received by the Husband and $7,689.00 that he received from the sale of a piece of equipment he was awarded pursuant to the agreement of the parties. Husband asserts that this debt puts him in a negative position as to the division of property and that the debt should be divided between the parties with each responsible for $92,339.50. Therefore, he claims that the $92,339.50 debt should be subtracted from the $100,000.00 he owes Wife so that his payment is only $7,660.50.

The record reflects that the trial court did consider the debt. The Order Granting Motions to Alter or Amend stated in part:

3. The Court considered a $176,999.00 joint debt in finding the marital real property had no significant equity. The request to modify is denied.

Marital debt should be allocated in the same manner as marital assets and should be considered when making an equitable division of property. *Herrera v. Herrera*, 944 S.W.2d 379, 389 (Tenn. Ct. App. 1996). The trial court should first separate individual debts from marital debts, *id.* (citing *Batson v. Batson*, 769 S.W.2d 849 (Tenn. Ct. App. 1988)), and then divide only the marital debts. *Mondelli v. Howard*, 780 S.W.2d 769, 773 (Tenn. Ct. App. 1989). Marital debts are those debts incurred during the marriage for the joint benefit of the parties. *Id.* When dividing marital debts, courts should consider the following factors: "(1) which party incurred the debt and the debt's purpose; (2) which party benefitted from incurring the debt; and (3) which party is best able to assume and repay the debt." *Id.* at 773.

The trial court correctly considered the debt. The debt was incurred by Husband in his farming operation and his business will benefit from the debt.

In sum, the decree of the trial court is modified to award rehabilitative alimony in the amount of $700.00 per month for three years. The decree is further modified to include as marital property the value of Husband's life estates in real property, and the case is remanded with instructions to determine the value of the life estates and make an equitable division thereof. As modified, the decree is affirmed. Costs of the appal are assessed to Husband.

_____
**W. FRANK CRAWFORD,**
**PRESIDING JUDGE, W.S.**

**CONCUR:**


_____
**ALAN E. HIGHERS, JUDGE**

_____
**DAVID R. FARMER, JUDGE**