# IN THE COURT OF APPEALS OF TENNESSEE
## AT KNOXVILLE
### September 14, 2016 Session

## SHANE SETH GHORLEY v. BRANDI LYNN GHORLEY

**Appeal from the Chancery Court for Monroe County**
**No. 18,203     Jerri S. Bryant, Chancellor**

---

### No. E2015-02051-COA-R3-CV – Filed November 10, 2016

---

This appeal, which stems from a divorce action, involves issues of child support and an award of attorney's fees. The father asserts error in the trial court's decision to award to the mother attorney's fees in the amount of $25,000 as alimony *in solido*. The father also argues that his co-parenting time with the children was not properly calculated when setting his child support obligation. Following our thorough review of the evidence in light of the statutory factors, we conclude that the trial court properly awarded $25,000 for attorney's fees to the mother as alimony *in solido*. We also determine, however, that the permanent parenting plan order entered by the trial court contains an internal inconsistency. We therefore vacate the permanent parenting plan order and remand to the trial court for entry of an appropriate and internally consistent permanent parenting plan order.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed in Part, Vacated in Part; Case Remanded**

THOMAS R. FRIERSON, II, J., delivered the opinion of the court, in which D. MICHAEL SWINEY, C.J., and JOHN W. MCCLARTY, J., joined.

Joseph H. Crabtree, Jr., Athens, Tennessee, for the appellant, Shane Seth Ghorley.

Peter Alliman, Madisonville, Tennessee, for the appellee, Brandi Lynn Ghorley.

## OPINION

### I. Factual and Procedural Background

The father, Shane Seth Ghorley ("Father"), filed a divorce action against the mother, Brandi Lynn Ghorley ("Mother"), in the Monroe County Chancery Court on

September 5, 2013. Mother and Father were married in 1997 and separated in April 2013. The parties had three children, one of whom had reached the age of majority by the time of trial.

The record encompasses numerous pretrial pleadings filed by both parties, including various motions for contempt and motions for restraining orders. This highly contentious case was eventually tried over three non-consecutive days on December 8, 2014; December 15, 2014; and January 12, 2015. Several witnesses testified, including Mother, Father, and the parties' three children. At the conclusion of the trial, the court awarded an absolute divorce to Mother upon the court's finding that Father was at greater fault for the parties' divorce based upon his inappropriate marital conduct. The trial court also found that Father had been repeatedly in contempt of the court's prior orders for such actions as communicating with Mother through the children, failing to make support payments in a timely manner, and failing to return the children from co-parenting on time.

The trial court designated Mother as primary residential parent of the two minor children. In the permanent parenting plan order ("PPP") signed by the judge, Mother was awarded 212 days of co-parenting time annually, with Father enjoying 153 days of co-parenting time. In its oral ruling from the bench, the court announced a two-week, rotating schedule with Mother's having care of the children on Monday, Tuesday, Friday, Saturday, and Sunday of one week and Father's having care of the children on Wednesday through Friday morning of that week. During the following week, Mother was to have care of the children Monday through Thursday, and Father was to have co-parenting time Friday through Sunday, which the court stated would provide Father co-parenting time consisting of five out of every fourteen days with the children. The court also awarded to Father four non-consecutive weeks of co-parenting time during the summer. Based on Father's representation in his proposed parenting plan that his gross monthly income was $6,400 per month, the trial court set Father's monthly child support obligation at $932 per month pursuant to the applicable child support guidelines.

The trial court ordered that the parties retain joint ownership of the marital residence, with Mother to reside therein until the youngest child reached the age of eighteen or graduated from high school, whichever event occurred last. The court additionally ordered that during that time, Father would continue paying the $115 monthly mortgage payment as part of the court's alimony award to Mother. The court also ordered that following the youngest child's graduation/emancipation, the home would be sold and the proceeds equally divided between the parties. The court specifically divided the parties' other marital assets and debts. Regarding spousal support, the court awarded Mother additional alimony of $150 per month for a period of

eighteen months, determining that she maintained a need for alimony and that Father had the ability to pay.

Mother subsequently filed a motion for attorney's fees and discretionary costs, supported by respective affidavits. Mother sought fees in the amount of $27,650 and costs of $2,078. In an order dated May 28, 2015, the trial court awarded to Mother attorney's fees in the amount of $25,000, explicitly finding this amount to be reasonable. The court also awarded costs of $2,078. Father subsequently filed a motion to alter or amend the judgment, asserting, *inter alia*, that he did not have the ability to pay the amount of attorney's fees awarded. Thereafter, the trial court entered an order on September 14, 2015, by which the court affirmed its earlier findings that Father had the ability to pay alimony and that Mother had the need for such an award. The court determined that Mother was economically disadvantaged compared to Father and that even if Mother obtained full-time employment, she could not meet her financial needs. The court denied the motion to alter or amend, again determining the amount of the fee award to be reasonable, while also noting that Father had not challenged the reasonableness of the fees. Father timely appealed.

## II. Issues Presented

Father presents the following issues for our review, which we have restated slightly:

1. Whether the trial court erred by awarding to Mother attorney's fees without determining whether Father had the ability to pay such fees.

2. Whether the trial court erred in the amount of reasonable attorney's fees awarded.

3. Whether the trial court erred in its calculation of child support because the court did not properly include the total number of days annually that Father spends with the children.

## III. Standard of Review

As our Supreme Court has explained regarding an award of attorney's fees pursuant to an absolute divorce:

It is well-settled that an award of attorney's fees in a divorce case constitutes alimony in solido. *See* Tenn. Code Ann. § 36-5-121(h)(1) ("alimony in solido may include attorney fees, where appropriate");

3

*Herrera v. Herrera*, 944 S.W.2d 379, 390 (Tenn. Ct. App. 1996). The decision whether to award attorney's fees is within the sound discretion of the trial court. *Crabtree [v. Crabtree]*, 16 S.W.3d [356,] 361 [(Tenn. 2000)]; *Kincaid v. Kincaid*, 912 S.W.2d 140, 144 (Tenn. Ct. App. 1995). As with any alimony award, in deciding whether to award attorney's fees as alimony in solido, the trial court should consider the factors enumerated in Tennessee Code Annotated section 36-5-121(i). A spouse with adequate property and income is not entitled to an award of alimony to pay attorney's fees and expenses. *Umstot v. Umstot*, 968 S.W.2d 819, 824 (Tenn. Ct. App. 1997). Such awards are appropriate only when the spouse seeking them lacks sufficient funds to pay his or her own legal expenses, *see Houghland v. Houghland*, 844 S.W.2d 619, 623 (Tenn. Ct. App. 1992), or the spouse would be required to deplete his or her resources in order to pay them, *see Harwell v. Harwell*, 612 S.W.2d 182, 185 (Tenn. Ct. App. 1980). Thus, where the spouse seeking such an award has demonstrated that he or she is financially unable to procure counsel, and where the other spouse has the ability to pay, the court may properly grant an award of attorney's fees as alimony. *See id.* at 185.

*Gonsewski v. Gonsewski*, 350 S.W.3d 99, 113 (Tenn. 2011).

Determinations regarding child support are reviewed under an abuse of discretion standard. *See Mayfield v. Mayfield*, 395 S.W.3d 108, 114-15 (Tenn. 2012); *Richardson v. Spanos,* 189 S.W.3d 720, 725 (Tenn. Ct. App. 2005). "This standard requires us to consider (1) whether the decision has a sufficient evidentiary foundation, (2) whether the court correctly identified and properly applied the appropriate legal principles, and (3) whether the decision is within the range of acceptable alternatives." *State ex rel. Vaughn v. Kaatrude*, 21 S.W.3d 244, 248 (Tenn. Ct. App. 2000). To the extent that we need also review the factual findings of the trial court, we presume those findings to be correct and will not overturn them unless the evidence preponderates against them. *See* Tenn. R. App. P. 13(d); *Morrison v. Allen*, 338 S.W.3d 417, 425-26 (Tenn. 2011). "In order for the evidence to preponderate against the trial court's findings of fact, the evidence must support another finding of fact with greater convincing effect." *Wood v. Starko*, 197 S.W.3d 255, 257 (Tenn. Ct. App. 2006).

IV. Award of Attorney's Fees

Father contends that the trial court erred by making no finding that Father had the ability to pay attorney's fees. Father also argues that the amount awarded was excessive and unreasonable. We will address each of these issues in turn.

A. Award of Attorney's Fees as Alimony *in Solido*

Father asserts that he demonstrated to the trial court that his net income was only $3,486 per month. According to Father, after subtracting his regular living expenses plus his court-ordered monthly obligations of $932 in child support, the $115 mortgage payment on the marital residence, and $150 in alimony, he has a monthly deficit of over $860. Mother asserts that Father's gross monthly income was properly found to be $6,400 per month by the trial court. Mother contends that, based upon Father's actual income amount determined by the court, Father has the ability to pay his court-ordered obligations and the amount of attorney's fees awarded.

In making the discretionary decision regarding whether to award attorney's fees, the trial court should consider the factors enumerated in Tennessee Code Annotated § 36-5-121(i). *Gonsewski*, 350 S.W.3d at 113. Such awards are appropriate only when the spouse seeking them lacks sufficient funds to pay his or her own legal expenses or the spouse would be required to deplete his or her resources in order to pay those expenses. *Id*. Tennessee Code Annotated § 36-5-121(i) (2014) provides the following factors for consideration in making an award of alimony *in solido*:

> (1) The relative earning capacity, obligations, needs, and financial resources of each party, including income from pension, profit sharing or retirement plans and all other sources;
>
> (2) The relative education and training of each party, the ability and opportunity of each party to secure such education and training, and the necessity of a party to secure further education and training to improve such party's earnings capacity to a reasonable level;
>
> (3) The duration of the marriage;
>
> (4) The age and mental condition of each party;
>
> (5) The physical condition of each party, including, but not limited to, physical disability or incapacity due to a chronic debilitating disease;
>
> (6) The extent to which it would be undesirable for a party to seek employment outside the home, because such party will be custodian of a minor child of the marriage;
>
> (7) The separate assets of each party, both real and personal, tangible and

intangible;

(8) The provisions made with regard to the marital property, as defined in § 36-4-121;

(9) The standard of living of the parties established during the marriage;

(10) The extent to which each party has made such tangible and intangible contributions to the marriage as monetary and homemaker contributions, and tangible and intangible contributions by a party to the education, training or increased earning power of the other party;

(11) The relative fault of the parties, in cases where the court, in its discretion, deems it appropriate to do so; and

(12) Such other factors, including the tax consequences to each party, as are necessary to consider the equities between the parties.

Following our thorough review of the record, we agree with Mother that the trial court properly determined Father's gross monthly income to be at least $6,400. At trial, Father proffered as an exhibit a proposed permanent parenting plan and child support worksheet, and in both documents Father represented his gross monthly income as $6,484. In addition, Father's November 21, 2014 paycheck stub was entered as an exhibit. This paycheck stub evinced that Father's net income for one week was $1,454, with his gross income for that week exceeding $2,000. Multiplying Father's gross weekly income reflected on the paycheck stub by four weeks yields a gross monthly income substantially greater than $6,400. Furthermore, multiplying Father's weekly net income amount by four weeks would yield a monthly net income significantly more than Father's claimed amount of $3,486 per month.

By means of calculation, if the amount of Father's gross monthly income, determined by the trial court to be $6,400, is multiplied by twelve months, the product would result in Father's gross annual income being $76,800. According to Father's paycheck stub, his actual gross income earned through November 15, 2014, was $68,836. The difference between these amounts is approximately $8,000, which Father would easily earn during the remaining six weeks of 2014 at the demonstrated weekly amount of over $2,000. Father testified that he had been employed by Hope Industries for twenty years prior to trial. Ergo, there was no basis for the trial court to conclude that Father's income would change or decrease. Based upon the proof presented to the trial court, we conclude that the trial court did not err in determining Father's gross income to be $6,400 per month.

Our careful review of the evidence also supports the conclusion that Father has the ability to pay alimony based on his income and expenses. The trial court ordered Father to pay alimony to Mother for eighteen months in the amount of $150 per month. Father was also ordered to pay the monthly mortgage payment regarding the marital residence in the amount of $115 until the parties' youngest child reaches the age of eighteen or graduates from high school, whichever event occurs last. In addition, the trial court ordered Father to pay $932 in child support pursuant to the Child Support Guidelines.[1] Father's court-ordered obligations therefore total $1,197 per month.

In addition to the above, through his affidavit of income and expenses entered as an exhibit at trial, Father represented that his personal living expenses totaled $1,731 per month, including the $500 in monthly rent he claimed as owed to his father.[2] Therefore, Father has demonstrated monthly expenses totaling less than $3,000. We also consider that in the division of marital assets and debts, the trial court assessed to Father combined marital debt totaling approximately $4,000, an amount Father should be capable of satisfying considering his income.

Regarding Father's claimed monthly financial deficit, deducting a reasonable amount for tax withholdings from Father's gross income of at least $6,400 per month leaves a surplus of funds after the payment of his monthly expenses, including child support and spousal support.[3] We therefore conclude that Father had the ability to pay the alimony award of attorney's fees in the amount of $25,000, plus $2,078 in expenses. Although Father has not taken issue with any of the other factors applicable to an award of attorney's fees as alimony *in solido*, upon our careful review of the record, we determine that the evidence relative to the applicable factors militates in favor of the

---

[1] It is also noteworthy that none of these court-ordered obligations are long term. Mother testified that the youngest child should graduate from high school a few months after her eighteenth birthday, which will occur in December 2018.

[2] The trial court questioned the existence of a rent expense inasmuch as Father was unable to demonstrate that he had ever paid rent to his father.

[3] We note that Father filed an amended affidavit of income and expenses concomitant with his motion to alter or amend, which reflected the payment of approximately $200 additionally per month for homeowner's insurance and property taxes on the marital residence and a health insurance policy for Mother, these being items the trial court ordered Father to pay in the divorce judgment. In addition, Father claimed an increased amount of living expenses for himself. Because Father was never subject to cross-examination regarding this affidavit and it is unclear whether the trial court considered it, we do not find it appropriate to consider these amounts, see *Stovall v. Clarke*, 113 S.W.3d 715, 721 (Tenn. 2003), except to note that the relatively small amount of additional court-ordered responsibilities would not affect our overall determination regarding Father's ability to pay alimony.

award made by the trial court. We affirm the trial court's determination that Father should pay a portion of Mother's attorney's fees as alimony *in solido*.

## B. Amount of Attorney's Fee

Father argues that the amount of the trial court's award of attorney's fees to Mother is excessive and unreasonable. Father specifically points out that Mother's counsel billed for thirty-two hours of preparation for a hearing that was subsequently continued at Mother's request. Father asserts that Mother's counsel also billed for another thirty hours of preparation before the trial. According to Father, the billed fees were excessive because no novel legal issues existed and the parties' estate was modest.

As Mother notes, a trial court has great discretion in setting the amount of attorney's fees awarded. *See Owens v. Owens*, 241 S.W.3d 478, 496 (Tenn. Ct. App. 2007) ("[T]he appellate courts will ordinarily not interfere with an alimony in solido award for attorney's fees unless the trial court did not appropriately exercise its discretion based on the facts."). As this Court explained in *Owens*, "A trial court fails to exercise its discretion properly when its decision is not supported by the evidence, when it applies an incorrect legal standard, when it reaches a decision which is against logic or reasoning that causes an injustice to the party complaining." *Id.* Mother contends that the trial court reduced the amount of fees sought to an amount the court explicitly deemed to be reasonable in making its award and therefore did not abuse its discretion.

Tennessee Supreme Court Rule 8, Rule of Professional Conduct 1.5(a) sets forth the factors to be considered in determining the reasonableness of attorney's fees, providing:

> (a)    A lawyer shall not make an agreement for, charge, or collect an unreasonable fee or an unreasonable amount for expenses. The factors to be considered in determining the reasonableness of a fee include the following:
>
> (1)    the time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly;
>
> (2)    the likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer;
>
> (3)    the fee customarily charged in the locality for similar

legal services;

(4)     the amount involved and the results obtained;

(5)     the time limitations imposed by the client or by the circumstances;

(6)     the nature and length of the professional relationship with the client;

(7)     the experience, reputation, and ability of the lawyer or lawyers performing the services;

(8)     whether the fee is fixed or contingent;

(9)     prior advertisements or statements by the lawyer with respect to the fees the lawyer charges; and

(10)    whether the fee agreement is in writing.

In the case at bar, the trial court established the award of attorney's fees by reducing $2,650 from the amount originally sought to account for time expended by counsel in communication with the client. The court specifically found the amount of $25,000 to be a reasonable fee award. We note that Father submitted no proof to demonstrate that the award of fees was unreasonable. Mother's counsel supported his fee claim with an appropriate affidavit, which set forth his opinion that the time spent on the matter was necessary and reasonable, his representation that he contemporaneously and accurately recorded his time, and his opinion that his billing rate was within the customary rate charged in the area for the type of case. Mother's counsel also described his extensive experience in the field of practice.

Father filed no response regarding the fee affidavit or billing statement to demonstrate that the amount sought was excessive. In fact, in Father's motion to alter or amend that was filed after the fee award was entered, Father only argued that he did not have the ability to pay the award and that the "contentious" actions of both parties led to "numerous, unnecessary" filings and court hearings. Reviewing the evidence presented in light of the above factors, we conclude that the trial court did not abuse its discretion in setting the amount of attorney's fees and expenses awarded to Mother.

V. Child Support

Finally, Father argues that the trial court erred in its calculation of days with regard to his co-parenting time, which in turn resulted in a purported error in the calculation of the amount of his child support obligation.  As outlined in the trial court's oral ruling, the parties' PPP was intended as a two-week rotating schedule, with Father to enjoy co-parenting time with the children from Wednesday afternoon to Friday morning one week and from Friday afternoon through Sunday evening the following week.  Father posits that the trial court erroneously counted his co-parenting time from Wednesday afternoon to Friday morning as only one day instead of two.  Father bases his position on the following comment by the court:  "Dad picks them up after school on Wednesday, and he returns them to school Friday morning.  That counts as one day, because there's only one 12-hour period that he gets that count."  Mother contends that the trial court ultimately credited Father with five days out of every fourteen because the court noted at the conclusion of its ruling regarding the two-week rotating schedule "[t]hat gives Dad five out of the 14 days with the children."  Mother posits that the total number of days credited to Father on the PPP is accurate.

As Father correctly references, the Tennessee Child Support Guidelines provide the following useful definition:

> "Days" -- For purposes of this chapter, a "day" of parenting time occurs when the child spends more than twelve (12) consecutive hours in a twenty-four (24) hour period under the care, control or direct supervision of one parent or caretaker.  The twenty-four (24) hour period need not be the same as a twenty-four (24) hour calendar day.  Accordingly, a "day" of parenting time may encompass either an overnight period or a daytime period, or a combination thereof.

Tenn. Comp. R. & Regs. 1240-02-04-.02(10).  Therefore, based on this definition and the oral ruling announced by the trial court, Father would have co-parenting time of five days out of every fourteen.

The PPP actually signed and entered by the trial court, however, contained a different schedule for week two than that announced in the court's previous oral ruling.  The PPP provides the following with regard to week two:

> The Mother shall have the children on Monday and Tuesday.  The Father shall have the children on Wednesday, Thursday, Friday, Saturday and Sunday, with him receiving the children after school on Wednesday, insuring the children get to and from school during his co-parenting time,

10

until 6:00 p.m. on Sunday. During non-school days, the Father shall pick the children up on Wednesday at 6:00 p.m. until Sunday at 6:00 p.m.

According to this provision, rather than Mother's exercising co-parenting time with the children on Wednesday and Thursday during the second week of the rotation as the trial court stated in its oral ruling, those days would be part of Father's co-parenting time pursuant to the schedule contained in the PPP. Under such an arrangement, Father would have seven out of every fourteen days with the children rather than five. This would result in Father's exercising co-parenting time for a significantly greater number of days than the 153 days per year set forth in the PPP. We therefore determine that the day-to-day schedule provided significantly differs from the total number of days stated, thus rendering the PPP internally inconsistent.

Because we cannot reconcile the internal inconsistency in the PPP between the written two-week rotation schedule and the total number of annual days awarded to each parent, we have no choice but to vacate that order and remand this issue to the trial court for entry of an appropriate and internally consistent PPP. *See, e.g., In re Anthony J.H.*, No. M2011-01839-COA-R3-JV, 2012 WL 5258245, at *3 (Tenn. Ct. App. Oct. 23, 2012). Upon remand, the trial court should also ensure that the total annual days of co-parenting time awarded to Father is appropriately reflected upon the respective child support worksheet.

## VI. Conclusion

For the foregoing reasons, we affirm the trial court's award of attorney's fees to Mother as alimony *in solido*. We vacate the permanent parenting plan order entered by the trial court due to an internal inconsistency, and we remand for entry of an appropriate and internally consistent permanent parenting plan order. Costs on appeal are assessed to the appellant, Shane Seth Ghorley.

_____
THOMAS R. FRIERSON, II, JUDGE