IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
September 17, 2019 Session

## MIHIR KISHORCHANDRA PATEL v. JANKI ANIL PATEL

**Appeal from the Chancery Court for Madison County**
No. 73872     James F. Butler, Chancellor

—————————————————

**No. W2018-00820-COA-R3-CV**

—————————————————

The parties divorced after a thirteen year marriage in which the family was initially solely supported by Wife's $40,000.00 per year income, but ending with Husband earning approximately $850,000.00 per year. The trial court found that long-term alimony was appropriate given Wife's contribution to Husband's earning capacity, her inability to achieve his earning capacity despite her efforts at education, and the parties' relatively high standard of living during the marriage. Both parties take issue with the trial court's alimony award. Discerning no reversible error, we affirm the trial court in all respects.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed**

J. STEVEN STAFFORD, P.J., W.S., delivered the opinion of the court, in which W. NEAL MCBRAYER and CARMA DENNIS MCGEE, JJ., joined.

G. Michael Casey, Jackson, Tennessee, for the appellant, Mihir Kishorchandra Patel.

Michael A. Carter, Milan, Tennessee, for the appellee, Janki Anil Patel.

## OPINION

### I. BACKGROUND

Mihir Kishorchandra Patel ("Husband") and Janki Anil Patel ("Wife") were married in India on January 22, 2005. At the time of the marriage, Wife was an American citizen. After moving to the United States following the wedding, Husband eventually became an American citizen. Husband filed a complaint for divorce on December 28, 2015. As grounds, Husband alleged inappropriate marital conduct and irreconcilable differences. Wife filed an answer on February 5, 2016, as well as an amended answer on

July 27, 2016, in which she asked that Husband's divorce complaint be dismissed, or in the alternative, that she be awarded alimony in futuro, rehabilitative alimony, transitional alimony, and/or alimony in solido upon divorce. Wife also filed a counter-claim for divorce on the grounds of inappropriate marital conduct and irreconcilable differences. The parties engaged in several pre-trial discovery disputes and each filed motions for contempt.[1]

Mediation was unsuccessful. Eventually, Wife was allowed to amend her answer a second time to include a jury demand. Trial occurred on February 26, 27, and 28, 2018. The trial was bifurcated with the jury first hearing the evidence regarding grounds for divorce. After the proof, the jury rendered a verdict finding that both parties were guilty of inappropriate marital conduct. The jury was then dismissed, and the trial court thereafter heard proof as to the remaining issues in the case.

At the time of the marriage, Husband was a full-time medical student earning no income, while Wife earned $40,000.00 per year in the accounting department at a university in Atlanta. Husband's education and career caused the parties to move across the Southeast, from Atlanta to Louisville to Florida to Ohio, and finally to Jackson, Tennessee. By the time of the divorce, Husband worked as a medical doctor earning approximately $850,000.00 per year, while Wife was not employed. Husband took issue with Wife's lack of employment, pointing to her historical earnings at the beginning of the marriage. Wife testified, however, that she was unable to find similar employment due to the parties' frequent moves and that, eventually, the parties agreed that she did not need employment due to Husband's high earnings. Following the separation, Wife had enrolled in college to obtain a Bachelor's Degree in Accounting and hoped to eventually gain a Master's Degree that could result in $80,000.00 to $90,000.00 in income per year on completion. Wife was a full-time student at the time of trial.

Each party presented evidence of their income and purported necessary expenses. Husband testified that he planned to move to Florida after the divorce and buy a home for approximately $425,000.00 to $450,000.00. Despite the fact that both parties lived in a home purchased for less than $200,000.00 in Jackson, Husband testified this expense was necessary due to the increased cost of living in Florida. Husband also testified that his base pay upon moving would be approximately $450,000.00. Husband admitted, however, that this figure did not account for the bonuses that Husband had historically received and had caused his income to increase substantially. With regard to expenses, Husband claimed as an expense $10,000.00 per month for savings in the event that he is sued for malpractice and his insurance does not cover the entire award, costs for his parents' health insurance, considerable maintenance on his car, and large charitable contributions. With regard to Wife's expenses, however, Husband contended that they were inflated over the expenses incurred during the divorce. Husband testified that many

---

[1] These contempt petitions are not at issue in this appeal.

- 2 -

of the expenses incurred by Wife following the separation were for extravagant gifts to family that were not representative of the parties' lifestyle throughout the marriage. Wife's sole income at the time of the divorce amounted to approximately $2,000.00 per year in dividends.

The parties had accumulated significant wealth during the marriage, including two cars, several retirement accounts, and large savings accounts. The parties' purchased a home in Jackson for $184,000.00. Husband paid off the mortgage during the pendency of the divorce. As such, the parties had no debt at the time of the divorce and considerable assets. During the marriage, the parties also took several vacations, both in the United States and outside the country. In addition to various work-related trips, the parties traveled to Europe, the Bahamas, India, Dubai, Peru, Costa Rica, the Dominican Republic, Hawaii, Savannah, Georgia, and several trips to Florida. Husband claimed that the trips cost only a few thousand dollars each; for example, Husband testified that the parties' eleven-day multi-country European vacation cost only $1,500.00 per person.

Much of the evidence concerning the marriage was sharply disputed. Each party claimed that the other was overly controlling of the parties' finances, refusing to permit the other to fund basic expenses. Husband testified that while in Atlanta, Wife and her family refused to provide him with necessities, such as heat and internet needed for his degree. In contrast, Wife testified that Husband would buy presents for his family in India, while denying her the same types of gifts. She also testified that she was required to do the vast majority of the housework due to Husband's schedule and his refusal to help around the home. This was especially true when Husband's family visited for extended periods of time, as Wife claimed that she was required to do considerable cleaning, shopping, and cooking, both before and during their visit. Wife also testified that she was required to prepare nearly all of Husband's meals, even on vacation. Each party placed the blame for the parties' lack of children on the other, with Husband stating that Wife refused to have children, while Wife claimed that Husband misled her as to his ability to do so.

Both parties also claimed physical and emotional abuse at the hands of the other spouse. In support of his claim as to Wife's emotional abuse, Husband played recordings of conversations between himself and Wife taken in 2010. In the recording, the parties are speaking their native language, but Wife's tone is angry, and she raises her voice on several occasions; Husband generally remains calm, but becomes loud on a few occasions as well. Two transcripts of the recordings were entered as an exhibit. The first transcript reveals that Wife was upset about Husband filling out paperwork to seek the citizenship of his family members in India, some of whom Wife describes as "worthless"; Wife threatens to burn the paperwork. Wife also threatens to call 911 on Husband, place him in jail, and ruin his career. A second transcript also concerns the citizenship papers for Husband's family and reveals Wife questioning whether Husband married her to become a citizen and indicating that she does not desire to have to take care of Husband's

family or to be insulted by them. There is also some discussion of whether Wife is hitting Husband; Wife denies this in the transcript. At trial, Wife did not deny the conversations, but testified that she was appropriately upset by Husband's plan to bring his family to the United States, as he had promised her that he would not do so when they were first married, Husband's family treated Wife poorly, expecting her to wait on them, and Wife felt that Husband used her to obtain his citizenship and medical residency.

The trial court issued a letter ruling on March 9, 2018. Therein, the trial court divided the marital property with $700,718.82 to Wife and $663,807.86 to Husband.[2] Wife was awarded as her separate property an account totaling over $100,000.00 that had primarily been funded by gifts from her parents. The trial court also awarded Wife alimony in futuro in the amount of $7,500.00 per month until her death, remarriage, or a material change in circumstances. In reaching this result, the trial court considered each factor outlined in Tennessee Code Annotated section 36-5-121(i), discussed in detail *infra*. The trial court further found that neither transitional nor rehabilitative alimony were appropriate, as these forms of alimony would not allow Wife to maintain a standard of living reasonably similar to the standard she enjoyed in recent years given the circumstances and equities present. The trial court, however, denied Wife's request for attorney's fees and rejected several other outstanding issues between the parties that are not at issue in this appeal.

The trial court entered a Final Decree of Absolute Divorce on April 13, 2018. Husband filed a timely notice of appeal on May 4, 2018. On May 14, 2018, Wife filed a motion to alter or amend the divorce decree and assess discretionary costs against Husband. On August 15, 2018, the trial court granted Wife's motion in part, altering some rulings with regard to marital property that are not at issue in this appeal. The trial court later granted Wife's request for an award of discretionary costs.

## II.    ISSUES PRESENTED

The parties raise the following issues as we perceive them in this appeal:

1. Whether the trial court erred in awarding Wife alimony in futuro of $7,500.00 per month.
2. Whether Wife is entitled to attorney's fees on appeal.

## III.    DISCUSSION

---

[2] Husband's overall award may be inflated by approximately $8,000.00 due to a ruling on Wife's later motion to amend that recognized that one account awarded to Husband had actually been depleted prior the divorce decree for purposes of paying the parties' attorney's fees. No error is assigned as to this ruling on appeal.

## A.

The central dispute in this case involves the trial court's award of alimony in futuro to Wife in the amount of $7,500.00 per month until her death, remarriage, or a material change in circumstances. On appeal, Husband contends that the trial court should not have awarded Wife alimony in futuro of $7,500.00 per month. Because Husband does not offer an alternative form, amount, or duration of alimony in his brief, as we perceive it, Husband's argument is that Wife should be entitled to no alimony in this case. In contrast, Wife contends that the trial court should have awarded her more alimony to cover all of her reasonable expenses and to properly take into account the tax consequences of the award.

Tennessee recognizes four separate types of spousal support: (1) alimony in futuro, (2) alimony in solido, (3) rehabilitative alimony, and (4) transitional alimony. Tenn. Code Ann. § 36-5-121(d)(1). Alimony in futuro, which is at issue here, "is a long-term form of support . . . [that] is appropriate when the economically disadvantaged spouse cannot achieve self-sufficiency and economic rehabilitation is not feasible." *Parrish v. Parrish*, No. W2013-00316-COA-R3-CV, 2013 WL 3203352, at *5 (Tenn. Ct. App. June 21, 2013) (citing *Gonsewski v. Gonsewski*, 350 S.W.3d 99, 107 (Tenn. 2011)). The statutory framework regarding spousal support reflects a legislative preference favoring rehabilitative or transitional alimony rather than alimony in futuro or in solido. *Gonsewski*, 350 S.W.3d at 109; *Parrish*, 2013 WL 3203352, at *6. While the legislative preference does not entirely eliminate an award of long-term support, "alimony in futuro should be awarded only when the court finds that economic rehabilitation is not feasible and long-term support is necessary." *Id.*; *see Bratton*, 136 S.W.3d at 605; *Robertson v. Robertson*, 76 S.W.3d 337, 341–42 (Tenn. 2002).[3]

Tennessee courts have "consistently recognized that trial courts have broad discretion to determine whether spousal support is needed and, if so, to determine the nature, amount, and duration of the award." *Parrish*, 2013 WL 3203352, at *6. Further, a trial court's "'decision regarding spousal support is factually driven and involves the careful balancing of many factors.'" *Id.* (quoting *Gonsewski*, 350 S.W.3d at 105). Accordingly, upon review, appellate courts are "disinclined to second-guess a trial judge's spousal support decision." *Kinard v. Kindard,* 986 S.W.2d 220, 234 (Tenn. Ct. App. 1998). Instead, when reviewing a spousal support award, an appellate court's role is to "determine whether the trial court abused its discretion in awarding, or refusing to award, spousal support." *Parrish*, 2013 WL 3203352, at *5 (citing *White v. Vanderbilt*

---

[3] The trial court made specific findings as to why short term alimony, i.e., rehabilitative alimony and transitional alimony, were not appropriate in this case. Although Husband appears to take issue with some of the findings supporting this decision, at no point in either Husband's initial or reply brief does Husband ask that the alimony be converted to a different type of alimony. As such, we will not tax the length of this opinion with consideration of that issue.

*Univ*, 21 S.W.3d 215, 223 (Tenn. Ct. App. 1999)). A trial court abuses its discretion when it "causes an injustice by applying an incorrect legal standard, reaches an illogical result, resolves the case on a clearly erroneous assessment of the evidence, or relies on reasoning that causes an injustice." *Id.* (citing ***Wright ex rel. Wright v. Wright***, 337 S.W.3d 166, 176 (Tenn. 2011); ***Henderson v. SAIA, Inc*.**, 318 S.W.3d 328, 335 (Tenn. 2010)). Therefore, when an appellate court is "reviewing a discretionary decision by the trial court, such as an alimony determination, the appellate court should presume that the decision is correct and should review the evidence in the light most favorable to the decision." ***Gonsewski***, 350 S.W.3d at 105−06 (citing ***Wright***, 337 S.W.3d at 176; ***Henderson v. SAIA, Inc.,*** 318 S.W.3d 328, 335 (Tenn. 2010)).

Because a trial court's decision regarding the type, length, and amount of alimony turns upon the unique facts of each case, courts may consider many factors, "including, but not limited to the factors contained in Tennessee Code Annotated section 36-5-121(i)." ***Parrish***, 2013 WL 3203352, at *6. The most important factors to consider, however, are the disadvantaged spouse's need and the obligor's ability to pay. ***Parrish***, 2013 WL 3203352, at *7 (citing ***Gonsewski***, 350 S.W.3d at 109−10). In this case, the trial court made detailed findings as to each statutory factor. As such, we will consider each factor and the trial court's finding thereon in tandem.

**(1) The relative earning capacity, obligations, needs, and financial resources of each party, including income from pension, profit sharing or retirement plans and all other sources; . . . .**

The trial court made the following findings on this issue:

Husband's gross earning capacity is currently about $850,000.00 per year. His net income based on his effective tax rate for 2016 would be in the range of about $550,000.00. Husband owes no debt, and will have significant assets from the property division. Wife's current income is zero essentially, but when she finishes school, if she is able to obtain employment in her field, and achieve a CPA designation, her gross income should be in the range of $55,000.00 according to testimony. If she pursues a Master's Degree and achieves it, her earning capacity could increase to $85,000.00 per year. Thus, there is a significant difference between the Husband's and Wife's earning capacity. Their obligations are about the same.

The trial court further found that Husband's reasonable expenses total $14,330.00, while Wife's reasonable expenses total $7,846.68.[4] Moreover, the trial court found that

---

[4] The trial court reduced both parties' expenses. Neither party has designated this reduction as an issue on appeal.

Husband's net monthly income would be set at $35,435.80, based upon Husband's estimated income upon his move to Florida.[5] As such, the trial court expressly found that Husband had the ability to pay alimony, while Wife had a need for alimony in the amount of $7,846.68, as she currently had no real income.[6] Husband does not dispute the trial court's findings with regard to this factor.

**(2) The relative education and training of each party, the ability and opportunity of each party to secure such education and training, and the necessity of a party to secure further education and training to improve such party's earning capacity to a reasonable level; . . . .**

Here, the trial court found that Husband had significantly more education that Wife, including a Medical Degree with Board Certifications in Gastroenterology and Nutrition, a completed Master's Degree, and a soon-to-be completed second Master's Degree. The trial court also found that Husband "has the financial ability to secure any additional education and training that he desires." In contrast, Wife had completed only a high school degree at the time of trial, but was soon to complete a Bachelor's Degree in accounting, with a planned Master's Degree in the future. According to the trial court, Wife could not complete her education during the marriage due to the frequent moves necessitated by Husband's job. Again, neither party disputes the trial court's findings as to this factor.

**(3) The duration of the marriage; . . . .**

The trial court found that the marriage was thirteen years, which is undisputed. Husband takes issue, however, with the trial court's previous finding that this was "not a short term marriage." According to Husband, "the parties' marriage may not be short-term, but it is certainly not long-term. Perhaps it falls somewhere in the middle." We discern no error in the trial court's finding. Here, nothing in the trial court's order indicates that it found the parties' marriage to be long-term. Rather, the trial court and Husband appear to be saying the same thing in different manners. Moreover, Husband cites no legal authority to support a finding that this marriage should be considered short-term. *See* Tenn. R. App. P. 27(a)(7) (requiring arguments to be supported by citations to authorities). Our research has revealed at least once case that has held that a marriage of seventeen years did not constitute a long-term marriage. *See **Garman v. Garman***, No. E2010-01215-COA-R3-CV, 2011 WL 1844057, at *10 (Tenn. Ct. App. May 16, 2011). However, the Tennessee Supreme Court has previously affirmed the award of long-term

---

[5] Although the trial court did appear to credit Husband's testimony regarding his reduced income upon his move to Florida, the trial court also found that it was "not logical" that Husband would move to an area with a greater cost of living to earn less income.

[6] Wife does earn an insignificant income from dividends.

support for a marriage lasting only twelve years. *See Aaron v. Aaron*, 909 S.W.2d 408, 411 (Tenn. 1995); *see also Aaron v. Aaron*, No. 02A01-9207-CH-00199, 1993 WL 532583, at *1 (Tenn. Ct. App. Dec. 17, 1993), *rev'd*, 909 S.W.2d 408 (Tenn. 1995) (stating that the divorce occurred after approximately twelve years of marriage). As such, the duration of this marriage, standing alone, is not a bar to the award of alimony in futuro in this case.

> **(4) The age and mental condition of each party;**
> **(5) The physical condition of each party, including, but not limited to, physical disability or incapacity due to a chronic debilitating disease; . . . .**

The trial found that, at the time of trial, Wife was 37-years old and Husband was 36-years old. The trial court further found that both parties are mentally and physically sound. Again, the parties do not dispute these findings.

> **(6) The extent to which it would be undesirable for a party to seek employment outside the home, because such party will be custodian of a minor child of the marriage; . . .**

The trial court found that this factor was not relevant as no children are involved. The parties do not dispute this factor.

> **(7) The separate assets of each party, both real and personal, tangible and intangible; . . . .**

The trial court found as follows with regard to this factor: "The separate assets of the parties are not significant relative to the overall wealth of the family. Wife's separate assets are shown on the Court's Property Division, along with any belonging to Husband." Husband disputes this factor, arguing that the trial court apparently ignored the award of an investment account to Wife as separate property. The account totaled $118,218.38 at the time of trial, which Husband asserts represented 8% of the value of the marital estate. Thus, Husband contends that the trial court erred in its consideration of this factor by failing to take into account Wife's separate property.

We are not persuaded that the trial court abused its discretion in its consideration of this factor. Here, the trial court did not fail to take into consideration Wife's separate property, but found that its value was not significant considering the overall assets of the parties. We cannot conclude that this finding was clearly erroneous. As Husband admits, this asset totals less than 10% of the total marital estate. Moreover, Husband testified at trial that he hopes to save over $10,000.00 per month, meaning that he can accumulate an

asset this size in approximately one year following the divorce.[7] Thus, while this asset is certainly relevant to an award of alimony, again, we cannot conclude that this asset, standing along, acts as a bar to an award of alimony in futuro in this case.

> **(8) The provisions made with regard to the marital property as defined in § 36-4-121; . . . .**

The trial court found that it had made an essentially equal division of marital property. Husband does not dispute this finding, although Wife was awarded slightly more property at the divorce.

> **(9) The standard of living of the parties established during the marriage; . . . .**

The trial court made the following findings as to this factor:

> [T]he parties engaged in a conservative standard of living after the marriage and Husband's move to the United States. When Husband began his fellowship, he earned better income and since moving to Jackson, Tennessee has earned significant income. The parties were able to secure and purchase a home and have no debt thereon. Both parties have relatively new vehicles, were able to make significant gifts to their family and loan money to family or friends. They were also able to take extensive trips and vacations, some of which were tax deductible to further Husband's career, but involved travel by both parties. Exhibit 5 to the trial sets out the parties' traveling in more detail. All this indicates a fairly high standard of living by the parties established during the marriage.

Husband disputes this finding, arguing that the parties did not enjoy a high standard of living during the marriage. In support, Husband notes that the parties lived in a home bought for less than $200,000.00 and had vehicles each worth less than $22,000.00. Husband also contends that Wife spent considerably more following the separation than during marriage. Moreover, Husband points to his own testimony that the parties' frequent trips cost no more than $3,000.00 per trip, even their trip to Europe.

We discern no abuse of discretion in the trial court's finding of a "fairly high standard of living." Although the parties certainly lived well within their means during the marriage, they enjoyed frequent trips overseas and paid off their home and cars, including a 2015 Mercedes. Significantly, the parties were also able to accumulate

---

[7] Of course, the trial court reduced his necessary expenses to remove this amount. Even with the alimony award in this case, Husband's anticipated net income, as found by the trial court, makes him more than able to place this amount in savings in his discretion.

considerable assets during the marriage. Moreover, the evidence does not preponderate against the trial court's finding that the parties, and Husband in particular, spent considerable money on family, friends, and charitable giving. Thus, although the parties may have lived conservatively given Husband's income, the trial court did not abuse its discretion in finding that their lifestyle involved a relatively high standard of living.

> **(10) The extent to which each party has made such tangible and intangible contributions to the marriage as monetary and homemaker contributions, and tangible and intangible contributions by a party to the education, training or increased earning power of the other party; . . . .**

> The trial court made the following findings as to this factor:

> Husband has made significant monetary contributions to the marriage. Since Wife has had no income since moving to Jackson, Tennessee, it is assumed that Husband has contributed to payment for her education and training. Wife worked after the parties marriage while Husband was involved in furthering his career by entering a residency program and doing a fellowship. Husband worked some during those periods and produced some income. Wife managed the household, enabling Husband to work long hours. Wife also made it possible for Husband to study and work without having significant household duties, thus contributing in a tangible and intangible way to Husband's education, training, and increased earning power.

Again, Husband disputes this factor. Although Husband concedes that Wife "may have made some of the contributions the trial court highlights," Husband contends that Wife's overall contribution to the marriage was negative. In support, Husband points to, *inter alia*, his allegations of Wife's extreme frugality, her refusal to immediately move with him to Louisville for his residency, her reluctance to allow Husband to gain citizenship, and her refusal to allow Husband to obtain citizenship for his family. Moreover, Husband alleged at trial that Wife turned violent over the question of his family's citizenship. Husband also points to the audio-recording of Wife, in which she angrily threatens to hurt Husband's career.

Wife, however, denies that Husband's testimony should be credited. Rather, she points to her own testimony that she and her family worked to take care of Husband's needs while in Atlanta and that she continued to do so throughout Husband's career. Because of this disputed testimony, Wife asserts that the trial court necessarily resolved this issue on the basis of credibility, which cannot be overturned on appeal absent clear and convincing evidence. We agree. The weight, faith, and credit to be given to any witness' testimony lies in the first instance with the trier of fact, and the credibility

accorded will be given great weight by the appellate court. *Whitaker v. Whitaker*, 957 S.W.2d 834, 837 (Tenn. Ct. App. 1997). If the trial court's factual determinations are based on its assessment of witness credibility, this Court "will not reevaluate that assessment absent clear and convincing evidence to the contrary." *Franklin County Bd. Of Educ. v. Crabtree*, 337 S.W.3d 808, 811 (Tenn. Ct. App. 2010) (citing *Jones v. Garrett*, 92 S.W.3d 835, 838 (Tenn. 2002)).

Here, the trial court clearly credited Wife's testimony that she contributed to the marriage over Husband's testimony that she did not. Husband has failed to show clear and convincing evidence to overturn the trial court's implied credibility finding in favor of Wife on this issue. Although there can be no dispute that Wife angrily threatened Husband on at least two occasions years prior to the divorce, we discern no error in the trial court's findings that overall Wife did contribute significantly to Husband's career. The undisputed evidence shows that while Husband was taking his boards, Wife and her family provided Husband's sole financial support. Later, Wife was required to move cities frequently to further Husband's ambitions and career. On these occasions, Wife was required to find the apartments and make the bulk of necessary living arrangements. Moreover, the moves prevented Wife from gaining any career advancement or obtaining further education. Husband's food needs, which were largely met by Wife during the marriage, were so particular that Husband now requires specific catering for each and every meal following the divorce. Finally, Husband admitted, although begrudgingly, that his marriage to Wife did allow him to gain citizenship more quickly, which furthered his medical career. Thus, the evidence does not clearly and convincingly show that Wife did not significantly contribute to Husband's career and resulting earning capacity. Rather, the evidence supports the trial court's finding that Wife made tangible and intangible contributions to the Husband's increased earning capacity.

> **(11) The relative fault of the parties, in cases where the court, in its discretion, deems it appropriate to do so; . . . .**

The jury found both parties to be at fault for the demise of the marriage, and neither party takes issue with the jury's verdict.

> **(12) Such other factors, including the tax consequences to each party, as are necessary to consider the equities between the parties.**

The trial court made the following findings with regard to this factor:
Husband has a significant advantage over Wife in his employment prospects, because of the nature of his education and training. Wife is basically starting over in her career since she has not been able to secure longevity in any of her jobs other than the job she had at the time they married which she left, along with the benefits thereof, to assist Husband in pursuing his career goals which were purportedly to further the family

- 11 -

finances long term in the future. Further, Husband's contributions to Wife in the form of alimony in futuro are currently tax deductible and taxable to the Wife. Under the current law, this is scheduled to be reversed in 2019 wherein it will no longer be deductible to the Husband and not taxable to the Wife.

Although Husband does not take issue with the trial court's findings as to this factor, Wife assigns error in the trial court's analysis of the tax consequences of the alimony award. According to Wife, the trial court's conclusion that the alimony tax deduction would be "reversed" is a clear error of law, as the new tax laws regarding alimony only apply if the Final Decree of Absolute Divorce is entered after December 31, 2018. Because the divorce decree was entered on April 13, 2018, the alimony in this case remains deductible from Husband's income and taxable to Wife. Husband does not dispute that the trial court erred in its statement regarding the tax consequences of the alimony award, but argues that this misstatement has no effect on the trial court's award of alimony.

Although we agree that the trial court erred as a matter of law as to its statement regarding the tax consequences of the alimony award, we cannot conclude that the trial court's abused its discretion in failing to award Wife additional alimony to take into account her full expenses and the tax consequences. Here, the trial court awarded alimony of $7,500.00 to begin in April 2018. Thus, even considering the trial court's erroneous statement that the alimony payment would no longer be deductible for Husband beginning in 2019, the trial court clearly found that $7,500.00 per month, taxable to Wife, was sufficient to meet Wife's needs at that time. Importantly, this is the time Wife was most in need of alimony, as she was still completing her Bachelor's Degree and earning relatively no income. Although this amount was somewhat less than Wife's need as found by the trial court, Wife was awarded significant assets in the divorce to make up this shortfall for the short period of time it would take her to earn her Bachelor's degree and begin earning income.

Under Rule 36 of the Tennessee Rules of Appellate Procedure, "[a] final judgment from which relief is available and otherwise appropriate shall not be set aside unless, considering the whole record, error involving a substantial right more probably than not affected the judgment or would result in prejudice to the judicial process." Tenn. R. App. P. 36(b). While the trial court made a misstatement concerning the tax consequences of the alimony award, such misstatement is harmless under the circumstances.

In sum, the trial court considered the factors contained in section 36-5-121(i) to find that it was appropriate to award Wife alimony in futuro of $7,500.00 per month until her death, remarriage, or a material change in circumstances occurs. After reviewing the record and the trial court's findings, we cannot conclude that the trial court's decision "causes an injustice by applying an incorrect legal standard, reaches an illogical result,

resolves the case on a clearly erroneous assessment of the evidence, or relies on reasoning that causes an injustice." ***Parrish***, 2013 WL 3203352, at *5. Here, the trial court properly considered all of the relevant factors under the statute. Importantly, these factors show both that Wife had a current need for alimony at the time of the divorce and that Husband had the ability to pay. Of course, the evidence shows that Wife's needs will soon nearly be met by her own employment, assuming that she obtains her Master's Degree.

Although need and ability to pay are important, Tennessee Code Annotated section 36-5-121(c)(2) provides additional consideration for the award of alimony in futuro:

> [W]here one (1) spouse suffers economic detriment for the benefit of the marriage, the general assembly finds that the economically disadvantaged spouse's standard of living after the divorce should be reasonably comparable to the standard of living enjoyed during the marriage or to the post-divorce standard of living expected to be available to the other spouse, considering the relevant statutory factors and the equities between the parties.

Tenn. Code Ann. § 36-5-121(c)(2). Thus,

> alimony in futuro is appropriate when

> > the disadvantaged spouse is unable to achieve, with reasonable effort, an earning capacity that will permit the spouse's standard of living after the divorce to be reasonably comparable to the standard of living enjoyed during the marriage, or to the post-divorce standard of living expected to be available to the other spouse.

***Gonsewski***, 350 S.W.3d at 107–08 (quoting Tenn. Code Ann. § 36-5-121(f)(1)). The trial court found that Wife had indeed contributed to Husband's career and resulting high earning capacity at the expense of her own career. When the parties married, Husband was a student from another country earning no income whatsoever. At the time of trial, he was an American citizen earning over $800,000.00 per year. Although Wife is making an appropriate effort to further her education, there can be no dispute that she has no prospect of achieving the same standard of living enjoyed during the marriage, with multiple overseas vacations, paid off homes and cars, gifts for family members, and the accumulation of significant assets, without some long-term support. Moreover, although this marriage was not long-term, the Tennessee Supreme Court has approved of alimony in futuro awarded after a marriage of even shorter duration where the spouse seeking

alimony was significantly economically disadvantaged relative to the other spouse and had made significant contributions to the marriage. *See Aaron*, 909 S.W.2d at 411.

"Under the abuse of discretion standard, a trial court's ruling 'will be upheld so long as reasonable minds can disagree as to propriety of the decision made.'" ***Eldridge v. Eldridge***, 42 S.W.3d 82, 85 (Tenn. 2001) (quoting ***State v. Scott***, 33 S.W.3d 746, 752 (Tenn. 2000)). As such, we do "not tweak or second-guess trial courts on alimony determinations[.]" ***Folger v. Folger***, No. E2014-02069-COA-R3-CV, 2016 WL 7786448, at *5 (Tenn. Ct. App. Jan. 28, 2016). Here, there can be no dispute that Husband has the ability to pay alimony in the amount ordered, in part due to Wife's contributions to his career throughout the marriage. Furthermore, there is also no possibility that Wife can achieve the same standard of living as she enjoyed during the marriage without the award of long-term support. As such, we cannot conclude that the trial court abused its discretion in awarding Wife alimony in futuro of $7,500.00 per month.

## B.

Wife next asserts that she is entitled to attorney's fees on appeal. "[T]he decision to award attorney fees incurred on appeal lies solely within the discretion of the appellate court." ***Stancil v. Stancil***, No. M2017-01485-COA-R3-CV, 2018 WL 1733452, at *2 (Tenn. Ct. App. Apr. 10, 2018) (citing ***Andrews v. Andrews***, 344 S.W.3d 321, 340 (Tenn. Ct. App. 2010)). With regard to an initial award of attorney's fees, our supreme court has explained that "[a] spouse with adequate property and income is not entitled to an award of alimony to pay attorney's fees and expenses." ***Gonsewski***, 350 S.W.3d at 113 (citing ***Umstot v. Umstot***, 968 S.W.2d 819, 824 (Tenn. Ct. App. 1997)). An award of attorney's fees in such cases is only appropriate "when the spouse seeking them lacks sufficient funds to pay his or her own legal expenses, or the spouse would be required to deplete his or her resources in order to pay them." ***Id.*** (citations omitted). Given the considerable property awarded to Wife in the divorce, we decline to award attorney's fees incurred on appeal in this case.

## IV. CONCLUSION

The judgment of the Chancery Court of Madison County is affirmed, and this cause is remanded to the trial court for further proceedings as necessary and consistent with this Opinion. Costs of this appeal are assessed to Appellant Mihir Kishorchandra Patel, for which execution may issue if necessary.

_____
J. STEVEN STAFFORD, JUDGE